### Gast *versus* Porter.

Though the judge was wrong in his reasoning, that the statute of limitations was a bar, yet as his judgment was right it will not be reversed.

A power given to executors to sell at the death of the widow is well executed, if the widow, for whose benefit the sale was postponed, as one of the executors, join in the deed, and the fee will pass to the purchaser. The intention of the testator governs the case, and makes it an exception to the general rule, that a devise to executors to sell upon a contingency cannot be executed till the contingency happens. The remainder men cannot complain that the particular estate was yielded before it would otherwise fall, and especially if benefitted by an early application of the proceeds.

ERROR to the Common Pleas of *Lancaster County*.

This was an action of ejectment in the name of Christian Gast, administrator de bonis non, &c., cum testamento annexo of Jacob Hiestand, deceased *vs.* David R. Porter.

It was brought to recover ten acres of land in West Hempfield township, Lancaster county.

It was admitted that Jacob Hiestand, plaintiff's testator, died seized thereof in November, 1816, having made his last will and testament, of which he appointed his wife Barbara executrix, and his son Jacob Hiestand and Cornelius Crum, executors.

The parts of his will, material to the present controversy, are as follows:

"It is my will that my beloved wife, Barbara, have all my personal property that I am possessed of, and have the mansion house I live in, and seven acres of land, more or less, that is attached to said house, together with all the buildings thereon erected; to have said house and premises during her natural life, and all profits arising therefrom in any wise, together with the use of ten acres of woodland, more or less, adjoining lands of Michael Bachman, Jacob Hiestand, Jr., and others, situate in Hempfield township aforesaid, during her natural life, for the use of fencing and firewood and other necessary uses; but she is not to sell any timber therefrom.

"It is my will that all my other lands be sold as soon as convenient after my decease.

"I do nominate and appoint my wife Barbara executrix, and Cornelius Crum and Jacob Hiestand, my son, executors of this my last will and testament; giving them and their survivors full power to sell and convey all my lands, that is not above specified, for the widow's use.

"At my wife's decease, the property specified for her use and benefit, is to be sold by any of the surviving executors, Cornelius Crum and Jacob Hiestand; and the amount what it sells for divided equally among my children, Mary excepted."

Barbara Hiestand, widow of testator, lived till January, 1842, when she died. On the 25th of January, 1847, the Orphans' Court of Lancaster county vacated the letters testamentary to Cornelius Crum and Jacob Hiestand; and on the 1st of December, 1847, letters testamentary, with the will annexed, were granted to Christian Gast, the plaintiff.

This suit was brought 1st December, 1847, to recover the ten acres devised in the will of Jacob Hiestand, Sr., to his wife's use during her life, and directed to be sold by his executors after his decease.

Defendant claimed under a conveyance dated June 2, 1818, Barbara Hiestand, Cornelius Crum and Jacob Hiestand, executors of Jacob Hiestand, deceased; for $400, purporting to convey the premises to Joseph Detweiler and his heirs, in pursuance of the will; and possession under said deed and sundry mesne conveyances in defendant and those under whom he claims, from its date to the present time.

Plaintiff claimed that the deed referred to was void, for want of power in the executors to sell during the widow's life time; and that the possession was not adverse to him until her death, in 1842.

The first bill of exceptions was to the admission by the court of the testimony of Jacob Hiestand, Jr., one of the executors in the will. The plaintiff objected to him as incompetent, and to the testimony offered as inadmissible.

His testimony went to shew a verbal assent of all the distributees under Jacob Hiestand's will to the sale of the ten acres by the executors, during the life of the widow; and was objected to by plaintiff as being the creation of an interest in land by parol.

The court instructed the jury, that under the evidence the defendant was entitled to a verdict; taking from their consideration the credibility of Jacob Hiestand's testimony, and all the points made in the case by both plaintiff and defendant, and placing it on the ground that the statute of limitation was a bar to plaintiff's recovery.

On the trial, defendants, in addition to the testimony of Jacob Hiestand, and other testimony, also offered a lease by Jacob Gamber to David R. Porter, of a furnace, and a right to raise ore from the land in dispute; also, a release by plaintiff to defendant of damages, on account of his taking ore as aforesaid, and some parol testimony in relation to the release.

Points were presented to the court on each side.

The errors assigned were:

1. The court erred in admitting the evidence set forth in the first and second bills of exceptions.

2. The court erred in withdrawing the whole case from the

[Gast *v.* Porter.]

consideration of the jury, and instructing them that the defendant was entitled to a verdict.

3. The court erred in refusing to answer plaintiff's points.

*Franklin* and *Stevens* for plaintiff in error.—They contended that on a devise to executors to sell, on a contingency, a sale, before happening of contingency, is void.

They cited 1 *Bin.* 546, Smith *vs.* Folwell; 8 *S.* & *R.* 299, Sweigart *vs.* Frey; 8 *Wheat.* 495, Daly *vs.* James; 11 *S.* & *R.* 311, Clark *vs.* Riddle; 10 *Watts* 274, Loomis *vs.* McClintock; *Sugden on Powers*, 349–50.

That the consent of a tenant for life does not validate the sale, as against persons entitled to proceeds of sale, to be made after his death. 8 *Watts* 203, Hay *vs.* Mayer.

That though the heirs might have taken advantage of the alienation by the widow, as a forfeiture, they were not bound to claim it as such, but had a right to await the determination of her interest, under the devise to her, before instituting proceedings to recover from her alienee. *Cowper* 689, Doe *vs.* Howe; 2 *Dow.* & *Ryl.* 38; 16 *Eng. Com. Law Rep.* 69.

*Parke* for defendant in error.—The sale was good. He cited 8 *Barr* 426; 15 *Law Lib.* 187; 3 *Atk.* 117; *Viner Devise R e pl.* 7, vol. 8 *p.* 469; *Cro. Car.* 382; *Hargrave's Co. Litt.* 146, 113 *A.*; 15 *S.* & *R.* 101; 4 *Rawle* 88; 9 *S.* & *R.* 268; 1 *P. Wms.* 149.

That the parties were estopped, 5 *W.* & *S.* 205; 6 *Barr* 228; 17 *S.* & *R.* 364; 8 *Watts* 280; 1 *Rawle* 171; 7 *S.* & *R.* 43.

The opinion of the court was delivered, May 23, by

ROGERS, J.—The learned judge thought proper to instruct the jury, that on the whole evidence the defendant was entitled to a verdict. The charge is undoubtedly obnoxious to the objection that it took from the consideration of the jury the credit to be attached to the testimony of Jacob Hiestand, a witness relied on by the defendant, in support of part of his defence; and if there was nothing else in the case, this alone would entitle the plaintiff to a reversal of the judgment. But excluding this testimony, the question arises, whether the court erred in giving a peremptory direction to the jury to find for the defendant. It is said the court placed the instruction on the ground that the statute of limitations was a bar to the plaintiff's recovery. But be this as it may, this is immaterial, as we have nothing to do with their reasons. If the judgment is right, it cannot be disturbed. A right judgment may be given for a wrong reason; and when no injury is done to the complainant, the judgment must be permitted to stand.

Several grounds of defence were taken at the trial, one of which

only, in the view we take of the case, will it be necessary to consider, viz: Was the power to sell well executed in the life time of the widow, she being one of the executors making the sale, and executing the deed. If' this question be answered affirmatively, there is an end of the plaintiff's title, and consequently no fault can be found with the directions of the court.

The plaintiff contends that when a testator devises real estate to executors to sell, on a certain contingency, if the sale be made before the contingency happens the sale is void, and conveys no title to the purchaser. For this position he relies on Smith *vs.* Folwell, 1 *Bin.* 546; Sweigart *vs.* Frey, 8 *S.* & *R.* 299; Loomis *vs.* McClintock, 10 *W.* 274, and Hay *vs.* Mayer, 8 *W.* 203.— That this is true, as a general proposition, cannot be denied; nor am I disposed to quarrel with the position of Lord Coke, who takes it for granted, *Co. Lit.* 113, that where there is a devise to A. for life, and that after his decease the estate shall be sold, the sale cannot be made during A.'s life, but must be delayed till his decease, although that opinion Mr. Hargrave, in note 2, *Co. Lit.* 113, shews to be at least a doubtful point, on authority, and is in direct opposition to the case of Uvedale *vs.* Uvedale, 3 *Atk.* 117. The devise was to the wife for life, and after her death the testator willed that the same should be sold, and Lord Hardwicke said that the words, after her decease, were not put in to postpone the sale. It is true, that in a case before the Court of Exchequer, in which the case of Uvedale *vs.* Uvedale was cited, where the devise was to A., the testator's wife, for life, and after her decease a power to trustees to sell and pay the money among the children of B., who had an infant child then living, the court held, that a sale could not be made till after the widow's decease, Meyrick *vs.* Coutts, Exchequer, 8, July, 1806, Ms. vide Sugden on Powers, 350, sec. 7. The reason for which the judgment was rendered is not given in Sugden on Powers. I cannot, therefore, say on what grounds they proceeded, although, if I may be allowed to conjecture, it was because the proceeds were to go to the children of B., at the time of her death, B. being living, some of whom might not have been in esse at the time of the happening of the contingency. The bill, which was an amicable one, was filed by the widow, against the trustees and the infant, for an immediate sale. Had the widow been the only person in interest, the decree would, I am induced to believe, have been otherwise. A review of the authorities, at any rate, indicate that even when no consent is given, the power to sell is at least doubtful. None of the cases however cited touch this point. The distinction is, that the widow, for whose benefit, as is apparent from the will, the sale is postponed, has signified her consent by joining in the deed, the whole title to the property is sold, out and out, for a full and fair price, and the fee, in the entirety, consequently vests in the pur-

[Gast *v.* Porter.]

chaser. That the cases cited are unlike this, is shown from this consideration, that in Smith *vs.* Folwell, the sale was on a contingency which never happened. Hays *vs.* Myers, was the case of a tenant for life, who did not assent to the sale, and therefore the property could not be sold for its whole value. Sweigart *vs.* Frey, administrator, is ruled on the idea that by the will the testator made the time of sale an important circumstance in the power given to the executors. Assuming the position, I grant the sale is void, for no sale is valid which is made before the time fixed by the testator has arrived. No person doubts the power of the testator, either with or without reason, to postpone the sale, and where this clearly appears, as in Daly *vs.* James, 8 *Wheat.* 495, the will of the testator cannot be gainsayed. But this, like every other question pertaining to wills, is a question of intention, which in this, as in all other cases, is the cardinal rule. It, therefore, is narrowed down to the single point of the meaning of the testator in the use of the words: "At my wife's decease, the property specified for her use and benefit, is to be sold by any of the surviving executors, and the amount it sells for divided equally among my children, Mary excepted." Did he intend that this part of his estate should not be sold until her death, although the widow who was alone interested in the postponement, consented to the sale. Without her permission, I agree it could not be sold, because it would necessarily prejudice the children, if sold subject to her interest. But when the title is sold out and out, when she consents to the sale, and when the children are entitled to the proceeds, on the sale being made, I perceive no valid objection to it, inasmuch as no person is injured by the transaction. An inspection of the will shews clearly that such could not have been his intention. Had such a combination of circumstances occurred to him, it is probable he would have provided for it, by giving power to sell, where the evidence showed it to be for her benefit. His design was not to devise lands, but to sell and distribute the proceeds of his estate, after paying all debts, except that part which he deemed necessary as a comfortable provision for his wife.— There is no evidence of an intention to postpone the sale, nor does it appear that he considered time as material for the interests of the children, to whom the proceeds were bequeathed. Had it not been for the wish to provide for his wife, there can be no doubt he would have ordered the whole of his estate to be immediately sold for purposes of distribution. In the cases cited there is either a precise number of years fixed, as in 10 *Watts* 274, or the contingency never happened, as in 1 *Bin.* 546, and 8 *Wheat.* 495; or there was no power to sell at all, as in 11 *S.* & *R.* 311, or it depended on the time of the happening of a particular event, when, for want of the assent of the tenant for life, the property could not be sold for a fair price. In the particulars enumerated, this case

VOL. I.—21.

differs from those cited. Here there was no uncertainty in the persons entitled to take. An immediate sale and distribution was for the interest of all, except the widow, who by joining in the deed, assented to the sale. As this provision in the will was intended for her benefit, it is text law that she had a right to waive it. She would be estopped by her deed. It would be against equity that the purchaser should lose his land, after paying the purchase money to the executors, who, it is to be presumed, distributed it among those legally entitled to receive it. It cannot be endured that the heirs or distributees should get the land and the money both.

Judgment affirmed.

Mr. Justice COULTER dissented, holding the case to be within the general rule, that there was no power to sell before the death of the widow, and there was no provision made before that time for distribution of the proceeds.