## B. E. HAMLIN, ADMR., v. R. THOMAS ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF MONROE COUNTY.

Argued March 14, 1889—Decided April 29, 1889.
[To be reported.]

1. Although a power to be exercised after a certain event cannot properly be executed before the event has occurred, yet when the power is ample, but its exercise is postponed for the benefit of a particular person, the consent of that person will be equivalent to the happening of the contingency.

2.  Where a testator devised real estate to his widow for life but directed that after her decease his executor should sell and convey the same and pay the proceeds to his children, a sale and conveyance by the executor in the widow's lifetime, but with her consent, will pass a good title to the purchaser.

3.  As a sale with the life-tenant's consent is not technically a conveyance of her estate, but a removal of a limitation upon the executor's power, otherwise sufficient, making it presently exercisable, no question under the statute of frauds is involved, and the life-tenant's consent may be shown by parol.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 56 January Term 1888, Sup. Ct.; court below, No. 20 December Term 1884, C. P.

On November 26, 1884, Byron E. Hamlin, administrator d. b. n. c. t. a. of John Widmer, deceased, brought ejectment against Reuben Thomas, James T. Carmer, Benjamin Tock and Julia, his wife, and Edward Nevil, to recover certain real estate in Stroudsburg.    Issue.

At the trial on October 7, 1886, the plaintiff showed that John Widmer, died seized of the premises in dispute on June 21, 1871, leaving a will dated June 2, 1870, duly admitted to probate, which provided:

"I give and bequeath unto my dear wife Lydia Widmer the whole of my double dwelling house, being the same double house the half of which we do occupy at the present, with stable and other outbuildings, and the whole of the lot of land belonging to the same, adjoining the land I purchased of James H. Stroud in the east, and land I sold to Jerome S. Williams in the south, and on lands of Zacharia Flagler in the west, situate on Sarah street in the borough of Stroudsburg, for the use and benefit of my said wife during her life; and from and after her decease I order that my hereinafter named executor shall sell the same at public vendue, and convey the same by deed to the purchaser or purchasers thereof, and all the proceeds arising therefrom I do bequeath to my four children, two sons and two daughters (begotten by my first wife), to be paid to them by my hereinafter named executor, in equal shares, share and share alike,

"I also bequeath unto my said dear wife all and whatsoever

goods and property is in the said house and stable, consisting of furniture, store goods, and farming utensils.

"And as to all residue of my real and personal estate, I order that my hereinafter named executor shall sell at public vendue all my real estate, collect all outstanding moneys due me, convey the said real estate by good deeds to the respective purchaser or purchasers, and likewise pay the whole of the proceeds thereof, after deducting expenses, to my four children aforesaid in equal shares, share and share alike."

The plaintiff further showed that letters testamentary were issued to John DeYoung, the executor appointed by said will, on July 15, 1871, and that said DeYoung died December 23, 1874, without having finally settled his accounts as such executor; that Mrs. Widmer, the widow of the testator, died January 29, 1884, and that on March 26, 1884, letters of administration with the will annexed were granted to the plaintiff in the suit. The plaintiff further showing that the defendants were in possession of the property described in the writ and that it was a portion of the property on Sarah street devised in the paragraph of the will first above quoted, rested.

The defendants offered in evidence certain judgments entered against the testator during his lifetime, which were liens upon his real estate at his death and were afterwards satisfied by DeYoung, his executor; this to be followed by proof of the sale of the property in dispute by DeYoung, the executor of the will, to the defendants or their vendors; that the sales were made, with the consent of the widow, for the purpose of paying the indebtedness of the estate and that the proceeds of sale were paid to the creditors.

The offer was objected to as incompetent and irrelevant; the defendants must show the power of the executor to make the sale, and the existence of debts due by the testator could not of itself confer a power.

By the court: Objection overruled, offer admitted; exception.[3]

Edward Nevil, one of the defendants, was called and asked if he knew of any agreement between the widow and DeYoung as to the sale of the property. Objected to.

Defendant proposed to prove by the witness that the widow Widmer came to him prior to the sale of the lots in question,

and told him there were debts against the estate, and the real
estate would have to be sold; that she urged him to buy one
of the lots adjoining the homestead, and that she would get
her daughter, Mrs. Amanda Fetherman, to buy the lot ad-
joining on the other side of the homestead, and some one else
would buy the lot on Monroe street, and by that means it
would save the dwelling house and lot for a home for herself;
that it was agreed by parol between the widow and John
DeYoung, the executor, that the lots in question should be sold
to pay the debts, and save a home for the widow; that subse-
quently the lots were sold at public sale in pursuance of that
agreement; that the widow was present when the lots were
publicly sold to Edward Nevil and Samuel Emery, and that she
made no objection to the sale, and that the widow bid in the
lot at the public sale for her daughter Amanda Fetherman, to
whom it was subsequently conveyed by the executor, and that
the widow acquiesced in these several sales up to the time
of her death.

Objection: Incompetent, immaterial and irrelevant; that the
want of power in the executor to make a sale under the will
cannot be cured by the verbal declarations or statements of the
widow, to the witness or other parties; and that the witness, as
the grantee under the pretended sale by the executor, is incom-
petent to testify in his own behalf, and that the witness is tes-
tifying in his own behalf as against the rights of the deceased
widow of John Widmer, deceased.

By the court: Objection overruled, offer admitted; excep-
tion.[1]

The testimony of the witness sustained the offer, except in
the respect that he was not present at the sale of the lot bought
by Mrs. Fetherman.

Other witnesses testified for the defendants to facts showing
consent to the sales on the part of Mrs. Widmer.

The defendants then offered in evidence the deeds for the
premises from DeYoung to themselves or their vendors, which
being objected to for want of power in the executor, the
objection was overruled and offer admitted; exception.[2]

In rebuttal, the plaintiff adduced the testimony of two wit-
nesses as to declarations made by Edward Nevil and his wife at
different times to the effect that Mrs. Widmer had always

objected to the sale and claimed that DeYoung had no right to make it.

The court, DREHER, P. J., charged the jury and answered the points presented as follows :

By his will the testator gave his executor power to sell his real estate, and the effect of this grant of power was, to vest in the executor the right to maintain ejectment for any lands belonging to the estate of Widmer, and under the law the present plaintiff is invested with all the powers granted to the executor under the will. Therefore, it being admitted that the land in controversy belonged to John Widmer at the time of his death, the plaintiff, as the representative of the estate of Widmer, will be entitled to your verdict, unless the defendants have shown a good title acquired since the death of Widmer, as against the plaintiff.

\*     \*     \*     \*     \*     \*     \*     \*

It is unfortunate for all parties that a competent lawyer was not consulted at the time the sales and deeds were made. He would, undoubtedly, have advised that the widow join in the deeds, or that the executor should apply to the Orphans' Court for an order of sale. This, however, was not done, and the question of the widow's assent must now be determined by the jury under the evidence. The burden rests upon the defendants to show by clear, certain, satisfactory and indubitable evidence that the widow, before the sales were made, gave her full consent that the executor should sell these lots for the payment of the debts of the testator. Land is usually conveyed by writing, for the reason that being of so permanent a nature, the law, in its wisdom, requires that there shall be some deliberate act done, as evidence of sale and purchase, and that there may be some public record made of the transfer of title and possession ; but, as [in the case of a power under a will to sell real estate, after the death of a life tenant, the law permits the consent of the life tenant to a sale to be in parol, or merely verbal,][12] yet it holds the very strict rule I have just stated as to the certainty and clearness of the evidence necessary to prove such consent.

The defendants allege that the lands of the testator outside of what is called the homestead, were not sufficient to pay his

debts, and that upon consultation between the executor and the widow they concluded to sell the lots in controversy, off the homestead, and leave the house and a lot with it for the widow during life. Now, if the evidence satisfies you beyond any reasonable doubt that such was the fact; that the executor and the widow, believing it was necessary to sell these lots to pay the debts, and she freely gave her consent to such sale; and in pursuance of such consent and understanding, these lots were sold, then we say to you your verdict should be for the defendants.

*　　*　　*　　*　　*　　*　　*　　*

The plaintiff requests the court to charge [inter alia]:

2. If the jury believe that the widow gave her consent to such sale in ignorance of her rights, or under a misapprehension or misunderstanding of her rights, then such consent did not cure the defect in the sale of the real estate.

Answer: I cannot affirm this point, under the circumstances of this case.[4]

3. If the widow consented to such sale under the representation of the executor or any one else that such sale was necessary to pay pressing debts, and save her home, when there was no such necessity for such sale, then the sale was null and void.

Answer: Negatived, unless the jury should believe, under the evidence, that such representation by the executor was a wilful misrepresentation, with intent to mislead or deceive the widow.[5]

4. That the evidence of Edward Nevil, Margaret Nevil, Wm. H. Nevil, and Anna Nevil, is not sufficient to establish the fact that the widow gave her consent to the sale.

Answer: I cannot affirm this point. The evidence is for the jury; and you will bear in mind what I have said in the general charge as to the evidence, in respect to certainty, fulness and undoubted character, to establish the consent of the widow.[6]

5. That the devisees of the remainder of the estate, having had no notice of the widow's assent, cannot be affected by her acts.

Answer: Negatived.[7]

6. There being no evidence that the alleged consent of the widow was communicated to Samuel Emery, before or at the

time he purchased, the sale as to him was null and void, and conveyed no title.

Answer: Negatived.[8]

7. The waiver of the widow, or consent that the life estate devised to her should be sold, can only be determined by plain and unequivocal acts or declarations, under a full knowledge of all the circumstances and of her rights. She was not bound to make any choice until she was fully informed of the relative value of the things she was to choose between.

Answer: Negatived.[9]

The defendants request the court to charge [inter alia]:

1. A power given to executors to sell at the death of the widow is well executed if the widow, for whose benefit the sale was postponed, waives said benefit by any means effective in closing her mouth against subsequent objections; and the remaindermen cannot complain that the particular estate was yielded before it would otherwise fall.

Answer: Affirmed. The jury will remember what I said in the general charge as to the character or kind and quantity of evidence necessary to show the consent of the widow.[10]

2. If the jury believe from the evidence in the cause that the widow of John Widmer, the testator, agreed with John DeYoung, the executor, to waive her right as tenant for life in the real estate sold, and described in this writ, for the purpose of paying the debts of the estate, and saving a home for her, the sales were valid, and the verdict of the jury must be for the defendants.

Answer: Affirmed. As I have said in the general charge, the evidence must be full, clear, certain and undoubted.[11]

The jury returned a verdict in favor of the defendants, and judgment was entered thereon. Thereupon the plaintiff took this writ and assigned as errors:

1–3. The admission of defendants' offers. [1 to 3]

4–9. The answers to plaintiff's points. [4 to 9]

10, 11. The answers to defendants' points. [10 11]

12. The part of the charge embraced in [ ] [12]

*Mr. H. Wilson* (with him *Mr. John B. Storm*), for the plaintiff in error:

Arguments.

1. An executor can sell only by virtue of a power given by the will, or in the absence of such power, by order of the Orphans' Court. In making a sale under the will, the power must be strictly pursued; the sale can be made only at the time or on the contingency appointed, and for the purpose directed by the testator: Neel v. Beach, 92 Pa. 226; Sweigart v. Frey, 8 S. & R. 299; Hay v. Mayer, 8 W. 203; Loomis v. McClintock, 10 W. 274. In the present case, the power of the executor, under the will, was limited to a sale for the purpose of making distribution. A direction to distribute, without an express power of sale, gives an executor no power to sell either for the payment of debts or for distribution: Clark v. Riddle, 11 S. & R. 311. There is no question that the land was sold for the payment of debts. The personal estate was the primary fund for that purpose: Risk's App., 110 Pa. 171; Walker's Est., 3 R. 229. A valid sale of the real estate for the payment of debts, must have been made under authority, either from the will or from the Orphans' Court, and there was no authority from either.

2. The rule laid down in the cases first cited, has been modified only to the extent of holding that a sale may be made by the executors, during the lifetime of the widow, when she actually joins in the deed: Gast v. Porter, 13 Pa. 533; Styer v. Freas, 15 Pa. 342. In both these cases, the principle that a power to sell cannot be executed in advance of the contingency on which it is to take place, is affirmed; and this principle is simply so far qualified as to permit an earlier sale, with the consent of the party for whose benefit the time has been postponed in the instrument granting the power, when this consent is given by deed. In Styer v. Freas, the case was put partly on the ground that there was nothing to restrain the widow from parting with her estate by a conveyance. In Gast v. Porter, there was a parol assent by the distributees, in addition to the widow's deed. In Styer v. Freas, the only parties interested, besides the widow, were the minor heirs of her deceased daughter; and as to them a sale after their mother's death was good, since the will directed a sale after her death, though it contemplated that she would outlive the widow, and gave her the estate for life after the widow's death.

3. So far as the case rests on the right of the widow to con-

vey her estate, it is within the statute of frauds. The widow's interest was a freehold estate. At common law, the creation or transfer of any freehold, whether of inheritance or not, required livery of seisin : 2 Bl. Com. 120. Under our recording acts, a deed duly recorded is equivalent to livery of seisin. But it has never been enacted or decided that a life estate may be conveyed or released except in the manner required to pass the fee : Kling v. Hummer, 2 P. & W. 349 ; Hart v. Carroll, 85 Pa. 508. Moreover neither the alleged consent of the widow, nor the parol sale at auction by the executor, passed any interest in the land to the purchaser : Kurtz v. Cummings, 24 Pa. 37. Nothing vested in them until delivery of the deeds. Between the time of the parol sale and the delivery of the deeds, the widow could have recalled her assent, had she given it in the manner testified to. It does not appear that she assented to the delivery of the deeds, and her omission to join in their execution indicates that her assent was lacking. For half a century, at least, the courts have regretted the relaxation of the statute of frauds : Moore v. Small, 19 .Pa. 466 ; Postlethwait v. Frease, 31 Pa. 474 ; Poorman v. Kilgore, 26 Pa. 365 ; Cox v. Cox, 26 Pa. 375.

*Mr. Charlton Burnett,* for the defendants in error :

1. By the power to sell, the estate under our acts of assembly was vested in the executor, subject to the life estate of the widow. Unquestionably the postponement of the sale was made solely for the benefit of the widow, and the testator could not have intended that the part of his estate should not be sold until her death, if the widow consented to the sale and it would inure to her benefit. That consent obtained, the executor had the power to sell, either for the payment of debts or for distribution. True, there has been a departure from the earlier cases : Smith v. Folwell, 1 Binn. 546, and Sweigart v. Frey, 8 S. & R. 299, holding that " a devise to executors to sell on a contingency, cannot be executed till the contingency happens; " but the counsel misconstrues the later cases, Gast v. Porter, 13 Pa. 532, and Styer v. Freas, 15 Pa. 342. In both these cases, the court referred to the fact that the life-tenant had joined in a deed of conveyance, but did not decide that the consent of the life-tenant must be given by deed.

2. All doubt, however, on this subject is removed by Brown's App., 27 Pa. 62, wherein it was said : " If the postponement of the sale was for her benefit, it is said to be text law that she may waive it by assenting to the sale before the period designated by the will: Gast v. Porter, 13 Pa. 533. If she may waive it in one way, she may certainly waive it by any other means equally effective in closing her mouth against subsequent objections." The cases cited as to the force of the statute of frauds have no application. The case in hand was simply the waiver of a right on the part of the widow, and under the facts found from the evidence, the widow would have been estopped from challenging the validity of the sale : Maple v. Kussart, 53 Pa. 348 ; Chapman v. Chapman, 59 Pa. 214 ; Miller's App., 84 Pa. 391 ; Woodward v. Tudor, 81* Pa. 382 ; Putnam v. Tyler, 117 Pa. 570.

OPINION, MR. JUSTICE MITCHELL :

John Widmer devised his homestead to his widow for life, and directed that upon her decease his executor should sell the same and pay over the proceeds to certain of his children. The executor sold during the lifetime of the widow, but with her consent. It appeared at the trial that the rest of the estate was not sufficient to pay the testator's debts, and that the executor thought the best thing to do was to sell part of the homestead, so as to retain the dwelling-house for the widow, and in this she concurred. It is not, however, contended that the sale, without a decree from the Orphans' Court, can be sustained upon the power of the executor to pay debts, but upon the widow's consent. As rightly ruled by the learned judge, the question whether the debts could have been met in some other way was immaterial, unless the widow's consent was obtained by fraud or misrepresentation, of which there was no evidence. The proof of the widow's consent was satisfactory to the jury, even under the strict standard laid down by the judge, that it must be " clear, certain, satisfactory, and indubitable," but it was all in parol, and we have thus the single question presented whether under such circumstances consent must be evidenced by writing.

The case does not call in question at all the settled rules that powers must be strictly pursued, and that a power to be

exercised upon a given event cannot be properly executed before the happening of that event. But the exception is equally well settled that where a power is complete, but its exercise is postponed for the benefit of a particular person, the consent of that person will be equivalent to the happening of the stipulated contingency.

The devise to Mrs. Widmer was of "the whole of my double dwelling-house, being the same double house, the half of which we do occupy at the present time. . . . . for the use and benefit of my said wife during her life; and from and after her decease I order that my executor shall sell the same," etc. The testator further directed the immediate sale by his executor, of all his personal estate, and all his other real estate, excepting only the homestead. It is thus beyond question that the power to sell was ample, and the postponement of its exercise was solely for the benefit of the widow, and that the interest of the only other parties who had any interest in the matter, the children who would be entitled to the proceeds, was to have the sale at once.

Gast v. Porter, 13 Pa. 533, was very similar to the present case. The devise was to the widow for life, with a direction to the surviving executors to sell upon her death; the executors sold during her life; and the question of the validity of the sale arose upon ejectment by the administrator cum testamento annexo; the only difference being that the widow was one of the executors, and as such joined in the deed. This circumstance, however, was not adverted to by the court as a ground of the decision. All that was said upon it was, "an immediate sale and distribution was for the interest of all except the widow, who by joining in the deed assented to the sale." The decision was put by ROGERS, J., entirely on the intention of the testator, and "as this provision in the will was intended for her (the widow's) benefit, it is text law that she had a right to waive it."

This case was followed by Styer v. Freas, 15 Pa. 339, where again the widow had joined in the deed, but again the decision was put exclusively on the intention of the testator. "Where the time is postponed," says GIBSON, C. J., "for the protection of a particular person, it may be hastened by the assent of that person, as it was in Gast v. Porter; but where it has been

postponed with a view to a probable rise in value, the persons entitled to the benefit of the chance, may insist on having it."

In neither of these cases was the form of the widow's consent discussed, but in Brown's Appeal, 27 Pa. 62, where there was a similar devise to the widow for life, and direction to the executor to sell at her decease, the widow elected to take under the intestate law, and it was held that the executor took the estate with immediate power to sell.    The intention of the testator was again held to be the guide.    "It is manifest," says C. J. LEWIS, "that the sale was postponed for the benefit of the widow . . . . and it is said to be text law that she may waive it by assenting to the sale before the period designated in the will: Gast v. Porter, 13 Pa. 533.    If she may waive it in one way, she may certainly waive it by any other means equally effective in closing her mouth against subsequent objections.    What can be a more decisive waiver than renouncing all benefit under the will?    The widow did this in open court, in pursuance of a citation which required her to make her election," etc.

These decisions rule the present case, and we do not see any compulsion to depart from them.    The idea that the widow's consent must be in writing undoubtedly arose from viewing the sale as a conveyance of her freehold estate.    But her consent is not technically a conveyance of her estate, but the removal of a limitation upon the executor's power, otherwise sufficient, thereby not enlarging it, but making it presently exercisable.    No question of the statute of frauds is really involved at all.

The evidence in the third assignment of error, as to the testator's indebtedness, was irrelevant, but it did no harm to plaintiff in error.    The widow's consent being proved, her reasons, or inducements, short of fraud upon her, were, as already said, immaterial.

Judgment affirmed.