# Loomis *against* M'Clintock.

A power by will to executors to sell real estate at a particular time, cannot be executed until that time arrives: a sale, before it arrives, is void.

ERROR to the district court of *Allegheny* county.

Ralph M'Clintock and others, devisees of Jane M'Cullough, against Luke Loomis and John Park.

This was an action of ejectment for part of lot No. 386, in the city of Pittsburgh.

The plaintiffs claim to recover possession of the property as heirs at law of Sarah Simpson, and devisees of Jane M'Cullough, deceased.

The title of the plaintiffs has been deduced as follows:—

[Loomis v. M'Clintock.]

March 1, 1807, Jacob Nigley and wife conveyed 44 feet on Wood street, including the ground in dispute to Joseph M'Clintock.

November 9, 1810, the same 44 feet of ground were conveyed by the sheriff of this county to William M'Cullough, being sold as the property of Joseph M'Clintock.

May 23, 1815, William M'Cullough, by his last will and testament, devises to his wife, Jane M'Cullough, all his estate, real and personal. November 25, 1820, Jane M'Cullough made her last will and testament, recorded January 5, 1821. By this will the testatrix makes the following disposition of the premises in dispute, and by virtue of which the plaintiffs seek a recovery.

" I give and devise my house, situate on Wood street, in the city of Pittsburgh, between Diamond alley and Fifth street, fronting 12 feet and 16 inches on Wood street, with the privilege of a three feet wide alley, now in the occupancy of E. F. Pratt, to my dear daughter, Sarah Simpson, formerly wife of Joseph M'Clintock, deceased, to have and to hold the said house and ground thereto belonging, subject however to the payment of ground-rent and taxes for the same, until such time as her daughter, Catharine M'Clintock, shall have attained the age of twenty-one years, or in case of said Catharine's decease, until such time as she would have been twenty-one years old if living. And then my will is, that the said house and appurtenances shall·be sold to the best advantage by my executors, and the proceeds thereof be equally divided among such of the four children of my said daugther Sarah, and her former husband Joseph M'Clintock, as shall be then living, share and share alike."

The present plaintiffs are the four children of Catharine and Joseph M'Clintock named in the will.

It appears that Mrs Simpson lived upon the property in question, until her father William M'Cullough died; and that after his death some time, her mother took her and her family home; that at the time of the death of Mrs M'Cullough, it was in the occupancy of E. F. Pratt; that in 1826 the house was nearly destroyed by fire, so much burnt as not to be worth repairing.

The house rented at different periods for sums between 100 and 150 dollars a year; and part of the time for only 80 dollars. The last rent paid upon it, and received by Mr Darlington, was on April 1, 1826. From 1821 to 1826 the rent of the house did not pay the ground-rent and taxes.

After the house was thus destroyed by fire, the executors of Mrs Jane M'Cullough met upon the ground, and concluded " that the best way was to get rid of the property, and if they could, to give it to the owners of the ground." An effort was accordingly made to do so, which failed.

After the fire Mr Benjamin Darlington, the brother-in-law of Mrs Simpson, and one of the executors of her mother's will, showed her a statement, proving, as Mr Darlington says, that the property

[Loomis v. M'Clintock.]

would be a charge to her, if she kept it, instead of an income; and that some time after the sale, perhaps two or three years, Mrs Simpson told Mr Darlington she would have been glad if the property could have been kept.    Mrs Simpson testified that she never consented to the sale.    Governed by what they believed to be at the time the wishes of their testatrix, and the interests of those concerned, the executors, on the 16th May 1826, conveyed the original 44 feet of ground on Wood street, including the premises in dispute, to Thomas Hartley and John Park.    John Park by deed from Thomas Hartley and wife, dated July 1, 1838, became the exclusive owner of the property in question, and is now the landlord defending this ejectment.

In the deed from the executors of Jane M'Cullough to Hartley and Park, are numerous recitals, amongst which is the following:

"And whereas the said Jane M'Cullough, by her last will and testament, bearing date the 25th November 1820, duly proved and recorded in the office aforesaid, constituted and appointed the said Benjamin Darlington, William Woods, and William Hays, her lawful executors, with power to dispose of her real estate at such times, and for such purposes, as in the said will is set forth and specified, allowing unto them in the disposal thereof much discretionary power," &c.

It is under this deed that the present defendant claims to hold the premises in controversy; and the single question is, whether it be a good and valid deed, giving him a title; or, in other words, whether the executors had the power under the will, to make the deed at the time they made it? whether their act be viewed abstractedly, and with reference to the papers only, or in connection with any peculiar circumstances supposed to warrant such act.

The points submitted by the defendant's counsel, together with the answers of the court thereto, cover the whole case.

The defendant's counsel asked the court to charge the jury:

1. That under the circumstances of this case, the deed from Benjamin Darlington and others, executors of Mrs M'Cullough, to Thomas Hartley and John Bark, was a good execution of the power given to them, and conveyed a good title to said Hartley and Park, and therefore the plaintiffs cannot recover.

*Dallas*, president.—"There is nothing in the circumstances of the case which can, in my opinion, have the effect of rendering valid and operative the deed under which the defendant claims to hold the property in dispute: nor can that deed, in any view I can take of the case, be regarded as a good execution of the power given to the executors.

"A naked power to sell only is given.    There is no devise of the premises to the executors, and the provisions of the act of March 31, 1792 (the same as those of February 24, 1834) do not help the executors, for the saving clause gives ' to every testator his right to direct otherwise.'

[Loomis v. M'Clintock.]

" With regard to the property in dispute, I can find no such 'discretionary power' as to 'the time and purposes of the sale,' as the executors seem to have thought they possessed. As executors, they could assume no control or authority over the property devised to Mrs Simpson, until the period should arrive when their naked authority to sell was to be executed.

" It was no part of their duty, nor had they, as executors, the slightest authority to meddle in any way with the property in question, until that time. It is not pretended that the payment of debts rendered it necessary to resort to this property.

" Mr Darlington may have acted as private agent and adviser of Mrs Simpson, during the time between 1821 and 1826, and doubtless throughout this transaction connected with her interests, acted as he deemed most prudent under the circumstances. But Benjamin Darlington, as the adviser and general agent of Mrs Simpson, and Benjamin Darlington, as the executor of Jane M'Cullough's will, are two very different persons in legal contemplation.

" The property was destroyed, and the ground-rent heavy and excessive, and property every where depressed in value. These were certainly cogent reasons for giving such advice as Mr Darlington gave to Mrs Simpson, so far as the interests of that lady in the premises were concerned. But as executor, he was bound to believe there was meaning, if not wisdom, in the solemn devise and injunction of his testatrix.

" Mrs Simpson, and Mr Darlington, as her friend, might have agreed upon and executed any temporary arrangement with regard to the premises, which, in their opinion, peculiar circumstances rendered advisable, and affecting the interests of Mrs Simpson; but neither he nor she could go beyond this.

" The property was sold by the executors in 1826, about nine years sooner than contemplated and provided by the testatrix: the daughter, Catherine, not being twenty-one years old, until December 14, 1835.

" A reference to the terms of the will is the only course by which to determine whether a naked power only is intended to be given, or whether the naked power is coupled with a trust and an interest.

" There is no part of the will from which can be gathered any more than a mere naked power to sell. That power could only be executed at the time specifically indicated by the testatrix.

" It has been contended that the word "then" does not refer to time. However ingenious and plausible the argument, I cannot think that any one desirous to ascertain the intention of the testatrix, could give that word any other construction than as indicating and fixing the time when. The same word is employed in the closing line of the devise, and its use there leaves no room for doubt as to its true force and effect. When sold, the proceeds of the property ' shall be equally divided among such of the four children of my said daughter Sarah, and her former husband Joseph M'Clintock, as

x.—y*

. shall be *then* living, share and share alike.' To what period of time does this last 'then' refer, if it be not to the time when Catherine shall arrive at the age of twenty-one years?

" We find, too, in another part of the will, that when the testatrix desires that the question of time should be left to the judgment and discretion of her executors, she expressly says so: I refer to that part of the will at the close of the devise to her sons.

" Time here, then, is a matter of substance, specially restricted and defined: not left to the discretion of the executors, nor to the influence of circumstances, no matter how untoward and unfortunate. The testator so declares: the whole will shows such to have been his intention.

" Something has been said as to the probability of the testatrix contemplating a rise in the value of property, such as took place between 1826 and 1835. Her motive for fixing the time of sale at a distant day must be matter of conjecture: but surely it is not saying too much, to suppose that, in 1820, when she made her will, and when all kinds of property were depressed, and continued for three or four years to become still more so, Mrs. M'Cullough believed that any change of times would be for the better, and that Pittsburgh might reach that importance which it continued steadily to acquire from 1826 down to the present period. If such was her belief, she certainly showed wisdom in postponing the sale of the premises until times should be more propitious, and when the proceeds to be distributed, after paying ground-rent and taxes, would amount to something worth receiving by her grandchildren."

" The counsel for defendant also requested the court to charge the jury:

" 2. That the plaintiffs have not shown any title in themselves to the property in controversy.

" The persons beneficially interested, after December 14, 1835, were the four children of Mrs Sarah Simpson, who are the present plaintiffs. This may therefore be regarded as an equitable ejectment.

" ' One universal rule,' says Judge Duncan, in Jones *v.* Maffet, 5 *Serg. & Rawle* 528, ' which pervades this equitable action is, that a party having a beneficial interest in lands, or arising out of lands, may have recourse for remedy to this action, when he has no other remedy by action at common law, and when chancery would grant relief; and this is now considered as common law.'

" The established principle, that where real estate is ordered to be sold, and the proceeds bequeathed, the persons beneficially interested may elect to take the fund, or real estate, has not been denied. It is contended, however, that the devise here is of the legal title to trustees, who are the executors. This is not so. A devise of land to executors to sell, passes the interest in it: but a devise that executors shall sell the land, or that the land shall be sold by the executors, gives them but the power to sell. The plaintiffs there-

[Loomis v. M'Clintock.]

fore have shown such a title in themselves to the property in question, as will entitle them to a recovery.

"Lastly, the defendant's counsel has submitted the following point: 'The plaintiffs claim under the principles of equity; and before they claim possession of the land, they must do equity, by tendering to the defendant the amount of ground-rent and taxes paid by him, which would have been a charge upon the property.'

"Independent of the conclusive answer that there has been no proof whatever of the payment by the defendant of any ground-rent and taxes, there is nothing upon general principles which would render necessary, as a pre-requisite to the institution of this suit, a tender such as is indicated by this point."

*Lowrie*, for plaintiff in error, on the subject of the power of executors to sell, cited 8 *Watts* 210; *Co. Lit.* 113, *a*, note 2; 3 *Atk.* 118; 1 *Sugden on Powers* 347; 2 *Ibid.* 488; *Godb.* 46; 2 *Leon.* 220; 1 *Lev.* 304; 9 *Com. Law Rep.* 351; *Dickens* 56; *Cro. Car.* 382; 1 *Wils.* 105; 1 *Eq. Cas. Ab.* 245; 2 *Cowan* 200; 6 *Wend.* 486; 12 *Ibid.* 603; 2 *Mundf.* 134; *Pow. on Powers* 160; 2 *Burr.* 1146. On the second point, 5 *Whart.* 562; 11 *Serg. & Rawle* 252; *Purd. Dig.* 940.

*Hampton* and *Beaver*, for defendant in error, on the first point, cited 3 *Binn.* 149; 2 *Page's Chan.* 202; 7 *Mass. Rep.* 488; 1 *Pick.* 318; 10 *Mass. Rep.* 105; 3 *East* 410; 8 *Serg. & Rawle* 299; *Sug. on Powers* 207; 2 *Penns. Rep.* 353; 8 *Watts* 210; 5 *Whart.* 562; 3 *Rawle* 326.

The opinion of the court was delivered by

ROGERS, J.—This is not the case of a *defective execution* of a power, as has been contended; for the executors had no power to sell until a certain period, which had not arrived at the time of the sale. The sale is therefore void, as is clearly shown by Justice Dallas, whose opinion we adopt. Here, time is not matter of form, but substance; and the powers of the executors depend on the intention of the testator, which was to postpone the sale until his daughter Catherine attained the age of twenty-one years, or, in case of her death, until she would have attained that age.

Judgment affirmed.