NAPIER *et al.*, executors, *v.* ANDERSON, administrator.

1. Where a testator devised in fee to his widow a particular piece of property (the tract of ninety acres hereinafter described) upon condition that she relinquish all right of dower and year's support in his estate, and after the probate of the will an agreement was entered into by certain heirs and legatees of the testator, including the widow, wherein she relinquished her dower and year's support, and by the terms of which the following provision was made for her benefit: "8th. It is agreed that Mrs. M. L. Napier [she being the widow of the testator] shall have the full $1,500, the rent of the swamp place for 1870; and for and during her natural life, the estate, use and income of all the following property, viz: the swamp place in Bibb county, near Macon; also, the income for the stock of the Macon Manufacturing Company, supposed to be twelve thousand dollars of stock therein, also of the note or debt due the estate by Mr. Joseph L. Multree of Alabama, together with any mortgage or other lien or security that has been or may be given to secure the same; also, the late residence of said Leroy Napier deceased, including about ninety acres of land, with all the improvements, furniture, carriages, horses and other personal property thereon, which is attached thereto or used as a part of said establishment; and the sum of five hundred dollars in cash, which sum, as also said fifteen hundred dollars to be paid her by said George C. Napier for the rent of the swamp place this year, is to be hers absolutely in fee." *Held*, that by the terms of this agreement a life-estate only in the ninety acres of land therein described was vested in the widow.

2. No prescription arose during the life of the widow in favor of a purchaser to whom, after the above mentioned agreement had been recorded, she had conveyed in fee a part of the ninety acres, as against the executors who had no power of sale under the will, but who, under another provision of the agreement, were charged with the distribution, after her death, of the property in which she had a life-estate under the terms of the agreement, although

one of the executors indorsed upon her deed to such purchaser his confirmation of the same as such executor.

February 27, 1895.

Ejectment. Before Judge Hardeman. Bibb superior court. April term, 1894.

Ryals & Stone, for plaintiffs. Hardeman, Davis & Turner and Willingham & Lane, for defendant.

Atkinson, Justice.

The questions made in this case arose upon the following state of facts: The executors of the will of Leroy Napier brought an action of ejectment against the defendant as administrator of Richard Woodson, for the recovery of a half-acre of land in the Vineville district of Bibb county. Upon the trial of the case, the plaintiffs introduced the will of Leroy Napier, those portions of which that are material to the questions made being as follows:

"Item 2d. I give and bequeath to my beloved wife, Matilda L. Napier, should she survive me, the tract of land whereon I now reside, containing about ninety acres more or less, being the homestead and including the buildings and everything appertaining thereto, together with carriages, horses, household and kitchen furniture, stove and utensils of every sort and kind to and for the use of said household as the same may stand at the time of my death; this I bequeath, however, on the expressed condition that my said wife shall relinquish by a proper legal instrument all interest or right of dower in any portion of the real estate of which I do possess [die possessed?] within sixty days after this my will shall be probated, and executors qualified to execute the same; after the signing of which relinquishment, the said homestead and property shall fully belong to my said wife in fee simple, to be enjoyed by her during her life or sold or disposed of by her by will or otherwise at her pleasure.

"Item 3d. It is my will and desire that my estate (except that bequeathed to my wife in Item 2d) shall belong to my wife and children equally, and be distributed be-

tween them in equal portions share and share alike, as soon as the same can be measured and prepared for distribution by my executors, each living child taking their share, and the heirs of any dead child taking the portion the parents would have been entitled to if living."

It appears by other items of the will, that the testator gave direction as to the sale of certain other lands owned by him, and made some further provision for his children. The will of the testator was admitted to record, and the executors qualified, two of them on the 20th day of September, 1870, and the other on October 7th, 1882. On the 17th day of September, 1870, the heirs at law of the testator, the executors named by him, and the widow, entered into an agreement for the distribution of the property of the testator; which agreement was as follows:

"Georgia, Bibb county. Whereas the undersigned as heirs and legatees of Leroy Napier Esq., late of said county, deceased, desire to close and settle up his estate as far as it can be done; and whereas it is not desired to sell the property at a sacrifice, as would be apt to follow, owing to the state of the country, if the same were done at this time; and whereas also several of the undersigned have received advances from their said father since the date of his will, which is desirable to ascertain and agree on: Now for the purpose of agreeing and settling all the above questions and any others that may be embraced herein, the parties whose names are signed hereto and who are all the heirs and legatees of said Leroy Napier, except the minor children of Edmond T. Napier Esq., deceased, whose father had been advanced the sum of $30,000 by said Leroy Napier deceased, as appears by his will, a sum larger it is supposed than will be coming to the other heirs and legatees, J. T. Welsman Esq. in this behalf acting as the father and natural guardian of his minor daughter Caroline Napier Welsman, do in consideration of the premises and of the sum of ten dollars in hand paid by each other, the receipt of which is hereby acknowledged to have been paid, covenant and agree to and among themselves as follows, to wit:

" 1st. The spirit and intention of the will of said Leroy Napier deceased, shall be carried into effect, except as the same may be changed and modified by this agreement. Then the following parties agree that they have been advanced the following amounts which are to be respectively charged to them as such: J. T. Welsman, for his daughter, $10,000; Dr. Stanford E. Chaille, and his wife Mrs. Mary N. Chaille, $8,580; Briggs H. Napier, $6,000; Edward Napier, $7,098.35, and also by note or due bill, $12,000, with interest on said $12,000 from July 1st, 1868. Hendley V. Napier agrees that he owes the estate of his father eight thousand dollars without interest, for the purchase of one half the plantation in Macon county, Ala.; also the sum of five thousand, eight hundred and twenty-three and $\frac{80}{100}$ dollars, being for mules, cows, corn, hogs and wagons purchased by him, out of which he is to retain an amount as an advancement to make him equal with the other children, and the balance, if any, is to be a debt he will owe the estate and for which he will give proper assurance.

. . . . . . . .

" 7th. George C. Napier owes the estate eight thousand dollars for the purchase of one half of the plantation in Alabama; also $2,355 for balance of wagons and mules furnished him by his father; also $3,500 advanced by his father to make the growing crops on the swamp place near Macon; out of which sums he is to pay $3,500 to the estate and $1,500 to his mother, in lieu of which two payments he is to have the crop of this year, and the balance is to be charged to him as an advancement.

" 8th. It is agreed that Mrs. M. L. Napier shall have the full $1,500, the rent of the swamp place for 1870; and for and during her natural life, the estate, use and income of all the following property, viz: the swamp place in Bibb county, near Macon; also, the income for the stock of the Macon Manufacturing Company, supposed to be twelve thousand dollars of stock therein, also of the note or debt due the estate by Mr. Joseph L. Multree, of Alabama, together with any mortgage or other lien or security that has been or may be given to secure the same; also, the late residence of said Leroy Napier deceased, including about ninety acres of land,

with all the improvements, furniture, carriages, horses and other personal property thereon, which is attached thereto or used as a part of said establishment; and the sum of five hundred dollars in cash, which sum, as also said fifteen hundred dollars to be paid her by said George C. Napier for the rent of the swamp place this year, is to be hers absolutely in fee.

"9th. In order to give said Mrs. M. L. Napier a sufficient income that she may be at ease and quiet in her advancing years, the following parties hereto, viz: J. T. Welsman for his said daughter, Briggs H. Napier, Edward Napier, Dr. S. E. Chaille and Mary Napier Chaille, Hendley V. Napier and George C. Napier, agree that they will each pay to her during her natural life the sum of $250, viz: each one of the six to pay her $125 on the first of January and July of each year for and during her natural life, the first payment to be made on July 1st, 1871, and the said annual payments of $250 to be a charge and lien on the respective interest and share of each one of the six in all of the property in which by the agreement the said Mrs. M. L. Napier is to have a life-interest, and at her death all of which property is to descend and go to the six of the heirs and legatees, and their heirs in case any should be dead, who unite in this article, viz: Miss Welsman, Mrs. Chaille, Briggs H., Edward, George C., and Hendley V. Napier.

"10th. In consideration of the above provisions for Mrs. M. L. Napier, she agrees to yield up and relinquish her dower, year's support, distributive share and all the interest and right in the estate and property of her said late husband, whether under his will or in any other way belonging to her, or which she may have any right or claim to.

"11th. Nathan C. Napier to have and receive the property and plantation in Wilcox county, Ga., known as the Henry place, which he agrees shall be in lieu and in full of all his claim to or interest in the estate of his said father, whether under the will or otherwise, unless the estate will distribute to each more than my advancement.

"12th. "It is further agreed, that for the purpose of managing the estate and carrying out the will of Mr. Napier and the agreement with more convenience to the

parties, that Briggs H. Napier and George C. Napier will qualify as such executors in Georgia, and Edward Napier and Hendley V. Napier will qualify as executors in Alabama.

" 13th. It is agreed, that so soon as the executors can do so consistently with the interest of the estate, they will proceed to equalize the advancements by sale of the property not herein specifically disposed of, leaving the property in which Mrs. Napier has a life-interest to be distributed at the termination of her estate."

This agreement was duly executed, and properly recorded on November 1st, 1870. It was shown, among other things, that the land sued for was a part of the ninety-acre tract mentioned in the agreement and bequeathed to the widow by the testator; that the testator was in possession of the land at the date of his death, and had been for many years. The widow, Mrs. M. L. Napier, died in March, 1892. The defendant, upon the trial of the case, introduced in evidence a deed from Mrs. M. L. Napier, the wife of the testator, purporting to convey the title in fee simple to the land in dispute to Richard Woodson, which deed bore date October 11th, 1871, recorded April 16th, 1872. It was admitted that Woodson had been in continuous, quiet, open, notorious, uninterrupted possession since the date of the deed, claiming the disputed premises as his own, and that his possession did not originate in fraud. The deed under which he held was signed, sealed and delivered by the widow in the presence of G. C. Napier and J. S. Napier, and bore the affidavit of G. C. Napier to entitle it to record, which affidavit was dated in December, 1871, and, in addition to the usual statement of facts contained in papers of like character, recited the following: "and this deponent says that as executor of Leroy Napier deceased, in consideration of said sum of three hundred dollars, do hereby ratify and confirm said foregoing deed and conveyance." Upon the trial of this

·case, the jury found in favor of the defendant, and the plaintiffs moved for a new trial upon the general grounds, and that the court erred in practically, by its charge, ·directing a verdict for the defendant and in not directing a verdict for the plaintiffs for the land in controversy.

1. There are no conflicting questions of fact involved in this case, and the rights of the parties must be settled upon questions of law alone. The charge of the ·court complained of, in its interpretation of the written evidence submitted, makes squarely the question whether, at the date of the execution of the deed by the widow to the defendant, she held the absolute title to ·the premises in dispute as of fee, or whether her interest in the land was limited to a life-estate alone. In determining this question, it will be useful to take a view ·of the situation as it existed at the time the agreement ·was made, which appears in the record, and which it is ·claimed was intended to be supplemental to the will. It appears that the testator had by the terms of his will invested the widow with the fee in the tract of land upon which he resided at the date of the execution of the will, and of which the premises in dispute constitute ·a part. This bequest in fee, however, was upon the express condition that the wife should relinquish by a proper legal instrument " all interest or right of dower in any portion of the real estate of which I do possess, within sixty days after this my will shall be probated, ·and executors qualified to execute the same "; and it was upon the condition that in so doing she was to ac- ·quire the fee simple title to that property. It appears that the testator during his lifetime had made large advances to various members of his family, and directed ·an equalization between them to be made by his executors from money to be realized from the sale of property belonging to his estate. By reference to the agreement, it will be found that in the effort to carry into execution

this will, some embarrassment arose. It became apparent that the testamentary scheme could not be carried into execution without great sacrifice of the property in which all were interested. Under these circumstances an agreement was made, which was admitted to record, by the terms of which, in consideration of provision made for her, the widow agreed to yield up and relinquish her year's support, dower, distributive share and all the interest and right in the estate and property of her said late husband, whether under his will or in any other way belonging to her or which she may have any right or claim to. Having by the will an interest as of fee, assuming that she waived her year's support and dower in accordance with its direction, all of which appears to have been done by her, yet the 8th item of the agreement above referred to, the provisions of which she accepted in lieu of the testamentary provisions made by the testator, provided that she should have the sum of fifteen hundred dollars, the rent of a certain piece of property for 1870; " and for and during her natural life, the estate, use and income of all the following property, viz : the swamp place in Bibb county, near Macon ; also, the income for the stock of the Macon Manufacturing Company, supposed to be twelve thousand dollars of stock therein, also of the note or debt due the estate by Mr. Joseph L. Multree, of Alabama, together with any mortgage or other lien or security that has been or may be given to secure the same ; also, the late residence of said Leroy Napier deceased, including about ninety acres of land, with all the improvements, furniture, carriages, horses and other personal property thereon, which is attached thereto or used as a part of said establishment; and the sum of five hundred dollars in cash, which sum, as also said fifteen hundred dollars to be paid her by said George C. Napier for the rent of the swamp place this year, is to be hers absolutely in fee." It is con-

v 95-40

tended by the defendant, that a proper construction of this clause of the agreement in question would vest in the widow the absolute fee to the property therein described, and thus enable her to make a legal conveyance of the fee to himself. He contends that the use of the word income, where it applies to the stock of the Macon Manufacturing Company, should be limited to those things only to which it is directly applied; that the words, "estate, use and income of all the following property," should be limited to the property as mentioned—the swamp place in Bibb county, near Macon. We do not think this item of that agreement bears that construction when we read it in connection with the other items of the agreement, particularly the 13th item, wherein it is agreed as follows : "that so soon as the executors can do so consistently with the interest of the estate, they will proceed to equalize the advancements by a sale of the property not herein specifically disposed of, leaving the property in which Mrs. Napier has a life-interest to be distributed at the termination of her estate." Thus it will be observed that this item provided for the distribution of all the property save only such as was not otherwise specifically disposed of, and as was held by Mrs. Napier for life; and when they undertook by the 8th item to describe what interest she should have in the property allotted to her under this agreement, they gave to her, first, fifteen hundred dollars ; they vested in her "for and during her natural life the estate, use and income of all the following property," including the tract of land of which the premises in dispute is a part. The other two items of five hundred dollars and fifteen hundred dollars in cash were given to her absolutely. In this clause of the agreement there are only two classes of estates sought to be dealt with : an estate for life, and an estate in fee. The latter is, by the express language of the agreement, con-

fined to the fifteen hundred dollars, rent of the swamp place for 1870, mentioned in the first sentence of the eighth paragraph of the agreement, and to the five hundred dollars mentioned in the last sentence of the same paragraph.   The fifteen hundred dollars referred to in the last sentence is the same fifteen hundred dollars referred to in the first sentence; so that if in the first sentence the quantity of interest the widow was to take in that fifteen hundred dollars was not actually defined, the reference to it in the last sentence, coupled with the statement that it should be taken by her absolutely and in fee, shows that those were the two items, and by such specific designation the only two, in which she took an unqualified interest.   All of the other items are enumerated among those parcels of property in which she took only a life-estate.   If it was designed then only to create a life-estate in her in the swamp place, and to convey to her the fee in the residence of Leroy Napier, it would have been entirely inappropriate to use this form of expression : " and for and during her natural life, the estate, use and income of all the following property."   If the purpose of the agreement had been to convey to her a life-estate in the swamp place in Bibb county only, then the use of the word *all* in the sentence immediately preceding should have been entirely omitted. The use of that word *all* would embrace all the property described in that portion of the agreement succeeding that sentence, except the last two items of cash, where the manifest purpose was to assign them to her absolutely.   There is not the slightest evidence of an intention to give to her anything absolutely in her own right, save only the two items of cash mentioned at the end of the clause of the agreement now under consideration. Under the will of the testator she might have acquired the fee.   By an agreement solemnly entered into with the other heirs at law, she relinquished this bequest in

her favor, and accepted in lieu thereof a life-estate only in this property. The additional provision made for her by the terms of the agreement between herself and the heirs, was an ample consideration to support her relinquishment of the provisions in her behalf made by the will ; and her acceptance of the property under this agreement, and consent that after the termination of the life-estate the same should be distributed to the heirs at law, vested in them the fee. This instrument, being recorded in time, operated as a conveyance to them of all interest she had in the property save only her life-estate ; and her deed to the defendant was consequently inoperative, except as to that interest.

2. During the life of the life-tenant, she was entitled to the absolute exclusive possession of this property. It was such an interest as could be sold by her, and the possession acquired under such a conveyance would be good, during the continuance of her life-estate, against the remaindermen. Neither they nor the executors had any right of action upon which they could have recovered the possession of this property against a purchaser from the life-tenant until after the death of the latter. They were, therefore, not required to bring suit until the happening of that event which terminated her estate and gave them a right of action. If the purchaser from the life-tenant bought a greater estate than she could herself convey, prescription would not begin to run against those entitled in remainder until their right of action matured. There was never any holding adverse to them until the termination of the life-estate. We think, then, that inasmuch as the undisputed evidence established in the widow only a life-estate, and no prescription accruing after her death had barred the right of entry, the court should have directed a verdict in favor of the plaintiffs.        *Judgment reversed.*