### SATTERFIELD *et al. v.* TATE.

1. A power given in a will to the executor, to sell any such portion of the lands devised as may become necessary by reason of some cause unforeseen to the testator, and then for the executor to sell such portion only with the consent of named devisees, was not validly executed by a parol agreement to sell, entered into, when no necessity for a sale had arisen, between the executor and one desiring to purchase, consented to and concurred in by such devisees, and the execution by such devisees to such person, at the instance and direction of the executor and for the purpose of carrying out such parol agreement, of an ordinary warranty deed, without any reference whatever to the power, the grantee in the deed paying a valuable consideration to the grantors, and all the parties understanding and believing, at the time, such transaction to be an effectual execution of the power in accordance with the terms of the will.

(*a*) Where such purchaser had notice, at the time of the transaction above stated, of the limitations upon the executor's power to sell, he took, under the deed executed by such devisees to him, only such estate in the land as the devisees had.

(*b*) While generally a court of equity will aid the defective execution of a power when the defect relates to matter of form in the execution, it will not render its aid where the exercise of the power is invalid for the reason that the donee at the time was not authorized to execute it.

2. A will which devised lands to Lina and Amanda for the life of Lina, with remainder to Amanda, but if they should both die without leaving child or grandchild, then all property not disposed of by the executor, in accordance with the power referred to in the preceding headnote, should revert to such persons as would be the testator's heirs at law at his death, had he made no will, gave a joint life-estate to Lina and Amanda during the life of Lina, and a defeasible vested remainder to Amanda, subject to be divested upon her dying without child or grandchild during the life of Lina; and where Amanda's remainder has been so divested, the land, at the death of Lina, without child or grandchild, will go to such executory devisees.

3. One to whom Lina and Amanda executed a warranty deed to the lands so devised, and in accordance with the transaction set forth in the first headnote, took the respective estates Lina and Amanda had in the lands, as stated in the second headnote, and upon the death of Amanda, without child or grandchild, during the life of Lina, no pre-

scription could arise during the life of Lina in favor of the grantee in such deed against such executory devisees.

Argued June 17, 1908.—Decided February 27, 1909.

Equitable petition. Before Judge Kimsey. Lumpkin superior court. October 22, 1907.

William B. Tate filed an equitable petition in the superior court of Lumpkin county against Barilla D. Satterfield of that county, and seventy-four other persons, some of whom resided in Lumpkin county, others elsewhere in this State, and still others beyond the limits of the State. The substance of the petition, so far as now material, was: Stephen Griffeth, late of Pickens county, Ga., died on November 11, 1873, testate, seized and possessed of lots of land 109 and 110 in the fourth district and second section of that county. His will was duly probated, and William Tate, the named executor, qualified thereunder. The following are the material parts thereof: "Item 3rd. I give and bequeath and devise to Lina and my daughter, Amanda Griffeth, persons of color, who were formerly my faithful domestic servants, lots of land number one hundred and nine (109), one hundred and ten (110), and the east half of one hundred and twelve (112), all of said lots of land situate, lying, and being in the fourth (4th) district and second (2nd) section of said Pickens county, each lot containing one hundred and sixty acres, more or less, known as my home place, together with all the appurtenances belonging to the same, and also all of my personal property. . . Item 4th. I desire and direct my executor, . . to hold the lands named in item three until the death of Lina, unless from some unseen cause to me it should become necessary to sell some portion of it, in which event he is to sell only such portion of it as Lina and Amanda may consent to, and at her, Lina's, death the land together with all the property not otherwise disposed of, of every description, during Lina's lifetime, named in said third item, to go to and vest in my daughter, Amanda Griffeth, daughter of Lina. But I desire and direct that my executor not to rent or control the lands, nor other property given in the above items, only to keep and sell such as may be necessary by and with the advice of Amanda and Lina. It being my desire and wish that the lands be a home for Amanda and Lina to control, rent, and enjoy the profits of, together with all other property during Lina's

lifetime, and at her death I direct my executor to turn over the land, together with all other property, to my said daughter Amanda unreservedly, to do as she may think proper with. Item 6th. I desire and direct that all the property given in this will to my said daughter, Amanda Griffeth, is given to her free from contracts, control, and sale of any husband that she marries, but is to be her sole and separate property; and if Lina and Amanda both die leaving no child or children nor grandchildren, then in ·that event the property not disposed of in their lifetime reverts . to those who now by law would be entitled to the same if I had made no will. Item 7th. I desire and direct that my executor,

. . not to have any appraisement of my estate nor to make annual returns to the ordinary, . . and that he make all sales by the advice and consent of Lina and Amanda, without order of the ordinary and at private sale, that may become necessary, and, after paying expenses, etc., to pay over the proceeds to Lina and Amanda, and to the other if one be dead. . . ”

On May 27, 1887, Lina and Amanda conveyed lots 109 and 110 to the petitioner by an ordinary warranty deed, making no reference therein to the will of Stephen Griffeth, to the executor thereof, or to the power given by it to the executor to sell the land. Since the date of such deed petitioner has been in the open, notorious, continuous, and peaceable possession of such lots of land, under claim of right. The executor was fully cognizant of and consented to the sale of the lands conveyed to petitioner by said deed, and petitioner purchased said lands from the executor, who acted in the premises on the authority of and by and with the consent and advice of said Lina and Amanda, said sale being made in pursuance of and in conformity with the provisions of said will. Lina and Amanda, as the lawful owners of said lands, had a right in and of themselves to convey the same, and said deed conveyed a full title to your petitioner; but the defendants named claim to own an interest in said lands by virtue of the sixth item of the will. Lina Griffeth had no child living then, save Amanda, and has had no children since, and possibility of further issue of the said Lina is extinct, she being now more than eighty years old; and since the execution of the deed to your petitioner Amanda has died without issue; and the said sixth item of the will could have application only to property devised to Amanda and Lina which was not

disposed of by them in manner and form hereinbefore stated. The claim of defendants operates as a cloud upon the title of petitioner, and, while without foundation, operates to his prejudice and embarrassment in the perfect ownership of the land. The prayers were, that the defendants be required to set up in the proceeding their claims to the land in question, if they have any; that a decree be granted, forever quieting and establishing the title of petitioner to such lands, and declaring him to be the owner thereof in fee simple; for injunction, general relief, and process.

Some of the defendants failed to appear. The others demurred to the petition, and filed answers. Among the grounds of demurrer were that the petition showed no title to the fee of the land in the petitioner, and that no equitable right against the defendants was set forth. There was also a special ground of demurrer, in response to which the plaintiff amended as follows: The purchase of said lands was by a parol agreement with the executor, consented to and concurred in by Lina and Amanda Griffeth, and the deed from Lina and Amanda was executed at the instance and direction of the executor in fulfillment of the parol purchase. The agreement was for the purchase of the fee-simple title, and the deed was intended to convey the same, and was believed by all the parties to be effectual so to do under the provisions of said will. Petitioner is in possession of the land, and can bring no action at law to assert and quiet his title; the claims of defendants under the will may be used vexatiously and injuriously against him, impairing the marketability of his title; and he has reason to apprehend that some of the evidence upon which he relies to impeach the claims of defendants and uphold his own title may be impaired and lost by lapse of time. He paid the purchase-money named in said deed, and the same went to the uses directed in the will; and if his deed is not in form a proper execution of the power of disposition given in the will, he is at least invested with a perfect equity in the land (possession having been at once given him by reason of said purchase and payment). The executor, William Tate, is dead. After purchasing and paying for the land, petitioner was put in possession of it by the executor and by Lina and Amanda Griffeth; and his possession and control has been absolute. The executor lived ten years after the making of the sale, without ever questioning the right and title

of plaintiff in the property; and Lina, who is still in life, and Amanda, who died on July 11, 1892, aged 58 years, also allowed him to remain in absolute, adverse, and peaceable possession.

The court overruled all the demurrers, and, after hearing the evidence submitted (the defendants offering no evidence), directed a verdict in favor of the petitioner against all the defendants, and entered thereon a decree that title to the two lots of land is vested in fee simple in the petitioner, and that all claims of the defendants thereto be declared to be void and the same be removed as a cloud upon petitioner's title, and the defendants be perpetually enjoined from asserting any claim to the lands. Defendants excepted.

*R. H. Baker, O. J. Lilly, H. H. Perry,* and *Charlton G. Ogburn,* for plaintiffs in error.

. *H. H. Dean, F. C. Tate, S. H. Sibley,* and *W. A. Charters,* contra.

FISH, C. J. 1. In the view we take of this case, it is necessary to adjudicate only a few of the questions raised in the record. In our opinion the demurrer should have been sustained. The first point we will consider is whether, under the allegations of the petition, there was a valid execution of the power of sale conferred by the will on the executor. As to this question some pertinent rules of law may be stated. The intent of the testator, as the donor of a power, governs. *Mackay* v. *Moore, Dudley,* 94, 96; *Berrien* v. *Thomas,* 65 *Ga.* 61; *City Council of Augusta* v. *Radcliffe,* 66 *Ga.* 469, 474; Taylor *v.* Atkyns, 1 Burr. 60, 121; Thorley *v.* Thorley, 10 East, 442, 443; Daly *v.* James, 8 Wheat. 535, 536 (5 L. ed. 670); 4 Kent's Com. (12th ed.) 345. Consequently, a person claiming title under the execution of a power takes under the authority of that power (Ib.; Bradish *v.* Gibbs, 3 Johns. Ch. m. p. 550; Doolittle *v.* Lewis, 7 Ib. 48); for an act done under a power must have its validity from the grantor of the power, and not from the person that executes it. Ibid.; Middletown *v.* Crofts, 2 Atk. 662. In Sears *v.* Livermore, 17 Iowa, 297 (85 Am. D. 564), the same principles are thus stated: "The appellant takes under the execution of a power, and of course under its authority, just as if the power, and the instrument executing it, had been incorporated in the same deed. Her title rests upon the act creating the power, and takes effect as if created by the original deed. Marlborough *v.* Godolphin, 2 Ves. 78; Cook *v.* Duckerfield,

2 Atk. 562; Doolittle *v.* Lewis, 7 Johns. Ch. 45 (11 Am. D. 389). The authority to sell being derived from the power, it follows that the purchaser is bound to look for and to understand the extent of the power, or, as elsewhere expressed, 'taking under the power, he is bound to see that its terms are complied with.' Ormsby *v.* Tarascon, 3 Litt. 410. And, of course in this, as in all other contracts, the object and design· of the parties should be kept strictly in view, in ascertaining the nature and extent of the power." In Stevens *v.* Winship, 1 Pick. 318 (11 Am. D. 178), it was held: "Where a testator devised certain land to his wife for life, and gave her power, in case of need, to sell all his estate, real and personal, for her comfortable support, . . she took only a life-estate with a power of sale depending on a contingency. Those who claim under a contingent power of sale in a will must show that the power was well executed, and that the contingency happened; and it is for the jury to decide whether it happened or not." In Griswold *v.* Perry, 7 Lans. (N. Y.) 98, it was held: "A purchaser of land from a trustee with power to convey only on the happening of an event, which is a condition precedent, must ascertain at his peril whether the condition has been fulfilled." In Ervine's Appeal, 16 Pa. 256 (55 Am. D. 499), it was held: "Power to sell, either in a will or deed, to be exercised on the happening of a particular· event, can not be lawfully exercised until that event happens." On same line, see, Sweigart *v.* Frey, 8 S. & R. 297; Hall *v.* McLaughlan, 2 Bradf. 107; Loomis *v.* M'Clintock, 10 Watts, 274; South Carolina R. Co. *v.* Toomer, 9 Rich. Eq. (S. C.) 270; Carlyon *v.* Truscott, 20 L. R. (Eq. Cas.) 348. "Every purchaser of realty for value takes the risk of his vendor being clothed with power to sell at the time of the sale, and by the mode of sale adopted." *Terry* v. *Rodahaun,* 79 *Ga.* 289 (5 S. E. 38, 11 Am. St. R. 420). In the case at bar, it appears. that item 4 of the testator's will directs the executor to hold the lands described in item 3 during the life of Lina Griffeth, but with the exclusive possession and control thereof in Lina and Amanda, as a home for them, they to rent the land and receive and enjoy the profits thereof; and that the executor should sell only such portion of said lands as might become necessary for some cause unforeseen to the testator, upon the consent of Lina and Amanda. The power was thus given to the executor alone, and to

be exercised by him only on the happening of a particular event, that is, some unforeseen cause rendering a sale necessary, and then to sell only such portion of the land as should be necessary, upon the consent of Lina and Amanda. There was no allegation or suggestion in the petition that anything had occurred rendering the sale of the land, or any portion thereof, necessary. Indeed it may be fairly inferred from the petition and its exhibits that no necessity for a sale had arisen. It was made about fourteen years after the testator's death, and presumably there were no debts of the testator then existing to be paid; besides, it appears that the purchase-money was paid, not to the executor, but to Lina and Amanda. And as Lina had no child except Amanda, and the latter had no children, it would be reasonable to presume, considering the amount of other property devised and bequeathed to them in the will, and their station in life and probable needs, they being negroes, that the sale of the two lots of land in question, 320 acres, all at one time, was not necessary for their support and maintenance. But be this as it may, no necessity for a sale appears from the petition. In the present case we need not go to the full extent of some of the rulings above referred to; for it is apparent from the allegations of the petition that the petitioner had knowledge of the condition upon which the executor was authorized by the will to exercise the power to sell the land. Petitioner alleges that he entered into a parol agreement with the executor as such for the purchase of the land, which agreement was consented to and concurred in by Lina and Amanda, and that the deed made to him by Lina and Amanda was executed at the instance and direction of the executor in fulfillment of such parol purchase, and the deed was intended to convey the fee-simple title to the land, "*and was believed by all said parties to be effectual so to do under the provisions of said will.*" (Our underscoring.) Clearly these allegations are equivalent to acknowledging and affirming that the petitioner, as well as the executor and Lina and Amanda, knew of the provisions of the will, of the particular power of sale therein conferred upon the executor alone, and that petitioner purchased the lands in question in view of this provision of the will. The only agreement to sell entered into by the executor was in parol. Even his request and direction to Lina and Amanda to execute the deed to petitioner was merely verbal. The deed so executed was

simply a warranty deed in the usual form, and purported to be a conveyance by Lina and Amanda Griffeth of the fee-simple title to the land in question to the petitioner, in consideration of $1,250 paid by him to them. There was no reference therein to the executor's power to sell, nor even any reference to the executor or to the will wherein this power was conferred upon him. While it has been held that a court of equity will aid the defective execution of a power, when the defect relates to matter of form in the execution, it has never been ruled, so far as we are informed, that it will render its aid where the execution of a power is not merely defective in form but invalid by reason of the fact that the contingency upon which the power was to be exercised has never happened. See 2 Pom. Eq. Jur. (3d ed.) §590; 22 Am. & Eng. Enc. L. 1130; Cockerill 1. Cholmeley, 1 Russ. & M. 418.

2. What title was devised by the will of Stephen Griffeth to Lina and Amanda Griffeth, whose deed of bargain and sale is held by the defendant in error? The third and fourth items of the testator's will, which must be read and construed together, gave a joint life-estate, for the life of Lina, to Lina and Amanda, with a vested remainder to Amanda at Lina's death. This vested remainder to Amanda is, however, made defeasible by the sixth item of the will, which declares that if Amanda dies leaving no child or grandchild, the property "not disposed of"—that is, by the executor in the lifetime of Lina in accordance with the power of sale in the will—shall revert to his heirs who would be such by law when he died, if he had made no will. All divesting clauses, especially of remainders, are to be construed so as to vest the estate indefeasibly at the earliest possible period of time. The period of posession or distribution indicated in the will now under construction is the death of Lina. Consequently, if Amanda had survived Lina, either with or without a child or grandchild, her defeasible vested remainder would then have become indefeasible, and belonged to her, in the words of the testator, "unreservedly to do as she may think proper with." It is therefore clear that the contingency for the divesting of the remainder to Amanda refers to her dying in the lifetime of Lina, without leaving a child or grandchild in esse at Lina's death. These legal principles need not be enlarged upon here; for they are thoroughly covered by the opinion in the case of *Sumpter* v. *Carter*, 115 *Ga*. 893, 899, 900 .

(42 S. E. 324, 69 L. R. A. 274), and the authorities there cited. As the contingency upon which Amanda's remainder was to be divested has happened by her dying, without a child or grandchild, in the lifetime of Lina, and as the latter had no other child than Amanda and is eighty years of age, without the possibility of having another child, upon her death the fee in the lands now in controversy, in the absence of a valid disposition of the same by the executor under the power of sale, will go to the testator's heirs under the sixth item of his will. The deed of Lina and Amanda, which purports to convey a fee-simple estate to the petitioner, passes only the title which they, respectively, had under the terms of the will. A purchaser of the entire estate from the life-tenant acquires only the interest of such life-tenant. Civil Code, § 3095. And a purchaser of the entire estate from the holder of a defeasible vested remainder takes the title subject to the contingency upon which it becomes divested before the period of possession or distribution. Nothing but the survival of the life-tenant by the remainderman, or by a child or grandchild of the remainderman, according to the terms in the limitation over, could make the remainder indefeasible or absolute, and give the fee to the grantee of the holder of such remainder. *Sumpter* v. *Carter,* supra. So that the death of Amanda Griffeth without a child or grandchild before the death of Lina, the life-tenant, which contingency divested Amanda's defeasible vested remainder, left the petitioner with no other title than that of a tenant per autre vie, that is, for the life of Lina.

3. This being the extent of the title held by the petitioner, what force is there in his claim to the title by prescription? Most clearly none. The executor held no greater estate than for the life of Lina, the life-tenant, though his investment with the power of sale extends to a sale of the fee, if made in accordance with the terms and conditions of sale authorized by the power. Civil Code, §§ 3191, 3171. This power, of course, does not enlarge the estate with which the will clothed him. See *Luquire* v. *Lee,* 121 *Ga.* 624, 628, 629 (49 S. E. 834), where these legal principles are fully stated. It could have made no difference in this case, so far as prescription is concerned, if the executor had held an estate in fee. In no event could he bring an action for possession of the land against the petitioner, who holds the deed of the life-tenant,

until after the death of the life-tenant. *Lamar* v. *Pearre, 82 Ga.* 354, 363 (9 S. E. 1043, 14 Am. St. R. 168) ; *Napier* v. *Anderson,* 95 *Ga.* 618, 628 (23 S. E. 191) ; *Fleming* v. *Hughes, 99 Ga.* 444, 450 (27 S. E. 971). Neither could the heirs of the testator, to whom the whole estate reverts upon the death of Lina, the life-tenant, and whose right of possession therefore only accrues at that time, commence an action against petitioner for possession of the land until after the death of Lina, the life-tenant. It follows that as the petitioner could not be ousted by these parties during the life of Lina, the life-tenant, he, of course, can not claim title by prescription against them during the same period of time.

What has been said above as to the demurrer controls the case as to the verdict directed, and shows that the direction of a verdict in favor of the petitioner against the defendants was erroneous and should be set aside.

*Judgment reversed. All the Justices concur.*