## BRYAN v. TATE et al.

An owner of an undivided interest in land was induced to sell the same at a gross undervalue on the false representation of the purchaser that he had been advised that the title was not good, and that the land was barren and of little value, whereas the title was good and the land was very valuable because of its marble deposit; and ten years thereafter instituted an equitable action to rescind the sale. As excusing his delay he alleged, that he had no reason to suspect the untruthfulness of the representations; that he lived more than 140 miles away; that the cost of investigation would have exceeded the purchase-price, and that an investigation would not have revealed a marble deposit on the land, and that he had no knowledge of the fraud complained of until three years before bringing suit. Held, that the plaintiff's voluntary failure to bring suit for three years after being fully cognizant of the fraud, committed seven years before that time, is such laches as will bar him of his action.

JUNE 13, 1912.

Equitable petition. Before Judge Morris. Pickens superior court. January 30, 1911.

*Stevens & Ogburn* and *Dorsey & Shelton,* for plaintiff.

*Samuel H. Sibley, William Butt,* and *Howard Tate,* for defendants.

EVANS, P. J. The petition was dismissed on general demurrer. It alleged as follows: The petitioner is a grandnephew of Stephen Griffeth, who died in 1873, seized and possessed of certain land in Pickens county, Georgia, leaving a will wherein the land was devised to L. and A. for the life of L., with remainder to A.; but if they should both die without leaving child or grandchild, then the property not disposed of by his executor should revert to those who would be entitled to the same as if the testator had made no will. The devisee A. died in 1902, without child or grandchild, and the devisee L. had no child or grandchild at the death of A., and she is now more than 85 years of age, and without possibility of issue. The executor died in 1907, without having exercised the power of sale. The plaintiff is a remainderman under the will, being one of the heirs at law of Stephen Griffeth. It is alleged that W. B. Tate, who had acquired the interest of the life-tenants, procured P. F. M. Furr to fraudulently secure petitioner's interest, which was one two hundred and sixteenth of the whole. Furr, on December 23, 1899, induced petitioner to make him a deed to his interest in the land for and in consideration of

$13.89, by falsely representing that he had been advised that the heirs of Griffeth had no claim to the property, and that the proposed purchase-price would have been petitioner's share if he had been an heir; and that the land was almost a barren field of little or no value. It is alleged that the land conveyed contained valuable marble deposits which were undeveloped and their existence was unknown to petitioner; and that petitioner relied on the truth of Furr's statements, and did not suspect, nor have reason to suspect, anything to the contrary; nor did any circumstances exist which would lead him to investigate the truthfulness of Furr's representations. Petitioner was also deceived by the representation that he had no interest under his granduncle's will. At the time he resided in the county of Banks, 140 miles away from the land, and a journey to the land would have cost him more than the sum he received for his interest, nor could he by investigation have learned anything as to the mineral value of the land. The real value of the whole property was from $400,000 to $500,000. Petitioner did not learn until 1907 of the fraud which had been practiced upon him. Furr conveyed the land to W. B. Tate on January 2, 1900, in pursuance of the scheme of Tate to acquire petitioner's interest. Tender of the amount was alleged to have been made to Furr; and the prayer was to cancel the deeds from petitioner to Furr and from Furr to Tate. The action was begun in 1910.

We think that the petitioner was in such laches that he lost whatever equitable right of rescission he may have had. As bearing upon his excuse for failing to sooner bring his action it may be proper to remark that the will in controversy is that construed by this court in Satterfield v. Tate, 132 Ga. 256 (64 S. E. 60). As there construed, the will gave a joint life-estate to L. and A. during the life of L., and a defeasible vested remainder to A., subject to be devested upon her dying without child or grandchild during the life of L., and upon the devesting of the remainder the property would go to the heirs of the testator as executory devisees. So that when petitioner conveyed his interest while A. and L. were both in life, he had only a contingent interest in the land; contingent upon A. and L. dying without issue. Assuming that the allegations of the petition make a case of fraud, petitioner waited over ten years since the perpetration of the fraud and three

years after its discovery before he appealed to the courts for relief. It does not appear when he tendered the purchase-price to Furr.

No principle is more firmly imbedded in our equitable jurisprudence than that which requires a suitor who seeks equitable relief to move with diligence and without delay. Vigilantibus non dormientibus jura subveniunt. Limitations of actions apply equally to courts of law and equity, but in addition the courts may impose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights. Civil Code, § 4369. Long acquiescence or laches by parties out of possession is productive of much hardship and injustice to others, and can not be excused but by showing some actual hindrance or impediment caused by the fraud or concealment of the party in possession. *Woolfolk* v. *Beatly*, 18 *Ga.* 520. No confidential or fiduciary relation existed between Furr and the petitioner because of their relationship. *Crawford* v. *Crawford*, 134 *Ga.* 114 (67 S. E. 673, 28 L. R. A. (N. S.) 353, 19 Ann. Cas. 932). So far as the record discloses, Furr and the petitioner were dealing at arm's length, and petitioner asks to be excused of diligence in detecting the fraud because he had no reason to suspect the falsity of Furr's representations; and because he lived 140 miles away and could not by investigation have known of the existence of the marble deposits. He does not state why an investigation would not have revealed a marble deposit, nor why Furr and Tate had superior knowledge thereof. He now knows of the marble deposit, but he fails to disclose the source of his information. Was the existence of the mineral apparent from surface outcroppings or from its development by the purchaser? If an inspection of the premises would have disclosed the existence of marble, then a most casual investigation would have revealed it. If the marble deposits were revealed by the defendant's development of the property, then it would be inexcusable laches for the petitioner to wait ten years, for three years of which time he had knowledge of all the facts, before moving to rescind his deed. Even if the petitioner be excused of laches for the seven years' delay, nevertheless, at the end of that period, when fully cognizant of the alleged fraud, he deliberately waited three years longer before appealing to a court of equity. The voluntary delay of three years, after knowledge of a fraud perpetrated seven years before that

time, is inexcusable, and bars petitioner of any right of action which he might have had. *Reynolds* v. *Martin,* 116 *Ga.* 495 (42 S. E. 796). *Judgment affirmed. All the Justices concur.*