Bruce G. Dean, S.
This is an application for a construction of the will of the testatrix, Lucie G. Bolton, that residuary interests, as set forth in paragraph ninth, vested in certain real property of decedent located at No. 115 West Green Street, Ithaca, New York, and that petitioners, as executors of the estate, he authorized to sell said premises to the life tenant, Ethel S. Wilkinson, with credit on the sales price of the value of her life use and .certain remainder interests in the said real property acquired from Robert L. Wilkinson and Virginia Crossmore.
This petition was returnable before the ¡Surrogate’s Court on May 30,1973.
By petition dated October 24, 1973, the said executors made further application to the Surrogate’s Court that a construction be made of paragraph ninth, subdivision b, as it relates to paragraphs sixth (:b) and sixth (f) of said last will and testament of Lucie G. Bolton, as to whether the beneficiaries named in paragraph sixth (b) and (f) qualify as beneficiaries under the provisions of paragraph ninth (b).
On the 28th day of November, 1972, the will of decedent was admitted to probate and petitioners herein duly qualified as executors. Heretofore, this court has signed an order to the effect that the residuary interests under paragraph ninth were vested in the remainder interest contained in paragraph fifth, which paragraph provided for life use of the Wilkinson Home at 115 West Green Street, Ithaca, New York, in Ethel S. Wilkinson, and to pass to the residuary estate for distribution upon the death of the said life tenant.
The court will first consider the issue of sale of the Green Street premises to the life tenant, Ethel S. Wilkinson, and the authority of the executors to sell the said property.
In the opinion of this court, with respect to beneficiaries other than William B. Wilkinson, brother of testatrix, the testatrix was primarily concerned with the welfare of Ethel ,S. Wilkinson, her sister. She manifested this concern under paragraph second, when she established the Ethel S. Wilkinson Trust in the sum of $250,000; and under paragraph fifth in which the life use in real estate, designated as the “ Wilkinson Home ”, was established, testatrix gave the actual full possession of said realty. Testatrix also provided, inter alia, in twelfth (a) that the Ethel *897 S. Wilkinson Trust was to be paid in full; that Ethel S. Wilkinson was a residuary legatee of one third of the residuary estate; that said trust provided that Ethel S. Wilkinson shall continue to live in the manner ishe was accustomed prior to the death of the testatrix, with power provided for invasion of the principal of the trust, and with payment of all taxes and other expenses in the maintenance and' upkeep of the Wilkinson home at 115 West Green Street during the life of Ethel S. Wilkinson. No. 115 West Green Street is the present home of Ethel S. Wilkinson.
Paragraph eleventh, inter alia, authorizes the executors and trustees, in their discretion, “ to render liquid my estate or any trust estate in whole or in part at any time ”. While this authority relates principally to the trusts for her sister and brother, Ethel S. Wilkinson and William B. Wilkinson, conceivably it could include the power of sale with respect to the Wilkinson home at 115 West Green Street, in the event a time should come when, ,by reason of advanced age or ill health, Ethel S. Wilkinson could not continue to occupy this residence. Until such time or status occurs, as the real property has been specifically devised, to the life tenant, any power of sale is limited and SOPA 1918 provides with respect to powers of sale under article 19. Section 1902 confers a power of sale of real property upon executors for any of the purposes enumerated, including subdivision 7For any other purpose the court deems necessary.” (See limitations on sale in sections 1905 and 1918.) SOPA 1918, entitled: “ Right of life tenant to be considered in disposition ” provides: *11. Where any party to the proceeding has * * * an estate for life * * * in the real property the court must determine whether fhe interests of all the parties will he better protected or a more advantageous disposition can be made of the real property by including the disposition of said right or interest”. (Emphasis supplied.)
None of the other six subdivisions of section 1902 is applicable here. In Matter of Hinman (22 Misc 2d 655, 657), which .involved a testamentary life estate, the court said: ‘ ‘ The executrix may however make appropriate application for the sale of the real property pursuant to section 233 ét seq. of the Surrogate’s Court Act.”
Section 233 of the former Surrogate’s Court Act is the source of SCPA 1901 et seq. Under article 19, it is the position of this court that, given necessary circumstances or conditions on application of executors, the court may direct a sale of real property although the owner of a life estate, or remaindermen of a life *898 estate, may oppose such disposition by reason of such a sale affecting matters of use and occupancy and increase in value of the realty. In the instant case, Ethel S. Wilkinson, as the life tenant, petitions for the sale, or at least joins in the petition, and is deemed, substituted for the executors as petitioner. An early question arose as to whether the petitioners were limited to the executors. SOPA 1904 (subd. 1) authorizes a proceeding for disposition of real property “ by a fiduciary or any person interested ” (emphasis added), which would give standing in this proceeding to Ethel S. Wilkinson as life tenant under paragraph fifth of the will.
As life tenant, and as a person .interested in the realty, Ethel S. Wilkinson seeks an order of this court .to direct a sale of the realty involved and the court is presented with the issue of whether any of the purposes of section 1902 are sustainable. The possibilities are:
“ 6. For the payment and distribution of their respective shares to the persons entitled thereto.
“ 7. For any other purpose the court deems necessary.”
Argument has been submitted in the memorandum of law of attorney Crossmore, for Ethel S. Wilkinson, under date of February 8, 1974, at page 1: “ Miss Wilkinson has lived in the Wilkinson home since she was a child. She gave up her youth in order to care for her mother, brothers and sisters in that house. Now they are gone. Only the house remains. The years she spent there have given her a great love for the Wilkinson home. She has wanted to be able to call it her own home ,* not part of it, but all of it.”
The remainder interest in the “ Wilkinson home ” at No. 115 West Green Street is marked for distribution ¡in the residuary estate under paragraph fifth with a large number of residuary legatees, approximately 25, which would contemplate and require a liquidation by sale and distribution of the remainder at the termination of the life estate through death of Ethel S. Wilkinson. Under such testamentary plan of1 the testatrix it would appear that the interest of the residuary legatees, as remainder-men, is financial only and their possession, title or occupancy of the “ Wilkinson home” as tenants in common would not have been contemplated, legally or practically, by the testatrix.
There is no question but that the premises would have to be sold at .sometime to effectuate a distribution under SOPA 1902 (subd. 6) and EPTL 11-1.1 (subd. [b], par. [5], cl. [A]), which séction is entitled “ Fiduciaries’ powers ”. The issue is when-. The life tenant requests a sale at this time.
*899 There is some indication in the memorandum of law of attorney Crossmore that were it the intent of the testatrix to retain the said realty until the death of the life tenant, it would require postponement of sale until death of the life tenant. This position is questionable.
EPTL '6-1.1 (subd. [a], par. [4]), which .section is entitled “ Estates classified ”, classifies “ Estates for life ” as an estate in property formerly termed a “ freehold estate ” which denoted both a fee simple and an estate for life. (Real Property Law, former § 33.) Every person entitled to actual possession of property has-a legal estate in such property. A life estate is not subject to the limitations or alienability imposed upon spendthrift trusts. (EPTL 7-1.5.) The alienability of the life estate is not limited, and if the life tenant 'has consented to and desires a sale of the real estate, what effect is to be given to such a disposition? Is the sale a renunciation of the life estate? Does the life estate continue in the consideration received from the sale of the realty? Does a sale of the realty terminate the life estate and accelerate the distribution to the remaindermen?
The life tenant cites authority for the position that sale of real property need not be irrevocably postponed until the life tenant’s death. He uses such language at page 7: “a life estate could be determined by not only death of the life tenant — but also by voluntary relinquishment on the part of the life tenant This, in substance, would constitute a renunciation of the life estate. 8 Yin. Abr. 469 [1752], at page 7: “ they may sell this land in the life time of the other, the word (after) this is as much as to say, after the determination of the estate.” (Emphasis supplied.)
And the life tenant emphasizes this language underlined by the court and refers to the determination of a life estate by death of the life tenant or by voluntary relinquishment. The , other case authorities cited at page 8 recite: “The wife renounces the estate for life, under the Will ” and Gast v. Porter (13 Pa. 533) also indicates a termination of the life estate, by such renunciation by the life tenant, .with termination of the life estate with the children, as remaindermen, entitled to the proceeds. Hamlin v. Thomas (126 Pa. 20) also refers to the consent as being equivalent to the happening of the stipulated contingency which defines a power.
Knapp v. Knapp (46 Hun 190) also cited by the life tenant, follows this g’eneral proposition by reference to the power of the executors to sell at the death of the life tenant. The court said at page 194; “ Here the widow is entitled to a life estate and *900 she joins in the contract upon which the property is to be sold, and, therefore, the only impediment, namely, the life estate, is by her act removed ”.
The authorities cited can be construed only as a renunciation of the life estate. Knapp v. Knapp (supra) has been shepar'dized and the court cannot find where it has been cited.
With respect to renunciation of her life estate by Ethel S. Wilkinson, EPTL 3-3.10, 11 Renunciation of testamentary dispositions ” provides that renunciation has the same effect' as though the party renouncing predeceased the testatrix. In Matter of Schloessinger (70 Misc 2d 206), the life tenant renounced and it was held, under the authority of Matter of Fordham (235 N. Y. 384), that the remainders accelerated and were then payable. While this doctrine of acceleration is by ease law, EPTL 3-3.10 may present problems where, for example, subdivision (c) provides that a renunciation of a present interest is deemed to be a renunciation of a future interest to the same extent. And there -are other provisions which require a thorough study and evaluation of the application of the theory of .renunciation of a life estate where other interests are affected thereby.
In Matter of Dexter (75 Misc 2d 239), it was held that renunciation did not accelerate a trust remainder where a spendthrift trust is involved, and the court held there that the trust income was payable to the remaindermen and they could not obtain immediate distribution of their eventual estate. Prior to EPTL. 3-3.10, there does not appear to be any statutory provision for renunciation of a testate share and its application was pursuant to case law. (Matter of Weinig, 66 Misc 2d 216.)
While renunciation of her life estate might be an answer to sale of the Wilkinson home, it does not seem necessary that a life tenant be required to consent tó a forfeiture of the benefits of a life interest in- order to dispose of the existing corpus of the life estate. SOPA 1918 provides for a determination of the interest of the parties, life tenant and remaindermen, and the protection of their interests in the disposition of real property. C'armody-Wait, New York Practice (2d ed., vol. 27, § 460.26 [Right of Life Tenant]) makes reference to .the disposition of real property, which is subject to the encumbrance of a life estate, and the power of the court to order a .sale or other disposition of the property, free of such interest. (Arnstein v. 141 Constr. Corp., 237 App. Div. 133, 134.)
With respect to the power of the court to direct a sale of real property without termination of the life estate by renunciation, *901 see Matter of Gaffers (254 App. Div. 448), where the sale of the real estate, which was .subject to the life estate, was opposed by eight .remaindermen, who objected to sale because of their desire to keep the property for improvement in price and neighborhood. The court directed a sale on the ground that it was to the best interest of the life tenant and remaindermen, with high taxes and deterioration and depreciation of the..property.
In Matter of Perkins (55 Misc 2d 834, 836-837) the court said: “ Having reached the conclusion that Grace Perkins has a life estate here and Helen Disch a remainder fee interest, the question now arises whether the court can order a sale of the property and disposition of the proceeds to each of the interested parties as her interest may appear. The circumstances under which the Surrogate may order the disposition of the real property of a decedent are found in section 1902 SCPA, the successor statute to section 234 of the Surrogate’s Court Act. It appears immediately from this record that only subdivision 7 of the section, if any at all, can have application here. It is an omnibus clause reading, ‘ For any other purpose the court deems necessary. ’ By its very terms the power is discretionary and, hence, good reason must appear for the sale. To justify a .sale, some estate purpose must be served, the action must serve to carry out the provisions of the will or be of benefit to those interested in the estate. There is a dearth, if not a total absence, of reported cases dealing with the subject and the court delving into it must have a pioneer attitude. ’ ’ (See, also, Matter of Hinman, 22 Misc 2d 655, 657, supra [sale directed]; see Matter of Wolff, 11 Misc 2d 709; Matter of Wentworth, 230 N. Y. 176; Matter of Dexter, 75 Misc 2d 239, supra, which hold that renunciation of a spendthrift trust will not accelerate payment to the remaindermen. The life estate in the Wilkinson home is not subject to such a construction. [A legal,, alienable, life estate — Matter of Carson, 58 Misc 2d 819, 820].)
It is the construction of the will and conclusion of this court herein that:
A power of sale exists under the will of Lucie G. Bolton which may be exercised by the executors pursuant to SCPA 1902 (subd. 7), under the omnibus clause, “ For other purposes the court deems necessary.” The proposed sale to the life tenant would not affect the testamentary intent of the testatrix, which is' to provide occupancy of the “ Wilkinson home ” by Ethel S. Wilkinson during 'her lifetime. The . monetary distribution of the remainder interest to the residuary legatees can be completed, The remainder interests would not exceed one third, *902 although attorney Orossmoxe alleges that the life tenant’s interest in the remainder exceeds 75%. Without a sale of the Wilkinson home during the administration of the estate, the distribution of the residue estate may be postponed many years with final distribution to the estates of many of the remainder-men. The Supplementary Practice Commentary to ,SCPA 1902 (McKinney’s Cons. Laws of N. Y., Book 58A, 1974-1975 Pocket Part, p. 35) cites Matter of Perkins (55 Misc 2d 834)- for the proposition that if a sale will serve proper estate purpose, such as allocation of proceeds between life tenant and remaindermen, the court has discretion to order it.
Possibly, the life tenant could insist that moneys from the sale constitute the corpus of the life estate, the income from which she might enjoy during her lifetime, with final distribution to the remaindermen at her death. Such was the holding in Matter of Hinman (22 Misc 2d 655, sufra).
The court does not feel that the other remaindermen, under their total interests of from 25% to 33%%, subject to approximately 20 divisible portions, can assert delay in sale from an appreciation in value benefit to them.
The court makes no finding on market value and directs a hearing to be held for the purpose of ascertaining the value of the property and any other facts which may tend to affect the discretion of the court under SOPA 1902 (subd. 7).
The matter is adjourned to June 24, 1974, at 10 a.m., for further proceeding relating to settlement of the decree.