OPINION OF THE COURT
John B. Riordan, S.
This is a proceeding pursuant to sections 1901, 1902 (7) and *635 1918 of the Surrogate’s Court Procedure Act by the decedent’s surviving spouse to dispose of the decedent’s interest in real property in which the petitioner has a life estate. The decedent, Sally E. Sauer, died on August 24, 2001. She was survived by a spouse, Arthur W. Sauer, Jr., the petitioner herein. The decedent was also survived by three children from a previous marriage — Kathleen Siracusa, Arthur Caddigan and James Caddigan. The decedent’s daughter, Kathleen Siracusa, was appointed executrix of her mother’s estate on December 5, 2001. The executrix opposes the application.
The decedent and her husband owned a home in Garden City as tenants-in-common. Pursuant to article Tenth of the decedent’s last will and testament, the decedent provided the following: “my husband, Arthur W. Sauer, shall continue to live, for his lifetime should he so choose, in our marital residence and he shall not be asked, forced, nor required in any manner to sell the premises until he so desires as long as the maintenance is paid by my husband, including all taxes and insurance thereon.”
The petitioner has asked the court for permission to buy the real property for $161,264.08. The aforesaid amount represents the decedent’s one half of the home based on an appraisal of $575,000 less one half of the outstanding mortgage less the value of petitioner’s life estate. The petitioner received an offer to buy the house for the amount of $605,000. When a contract was drafted and sent to the executrix to sign, the executrix was made aware, apparently for the first time, that the petitioner would seek the value of his life estate. The executrix refused to sign the contract. As a result the petitioner has now asked the court for permission pursuant to sections 1901 and 1902 of the Surrogate’s Court Procedure Act to buy the property himself since presumably the buyer may no longer be interested. The petitioner has further asked the court to value his life estate pursuant to section 1918 (2) of the Surrogate’s Court Procedure Act.
The question thus becomes, can the holder of a life estate force the sale of the real property and collect the value of his life estate over the objections of the remaindermen, or can the remaindermen simply wait for the death of the life tenant and collect the full value of their interest in the real property upon his death?
Although not in dispute, the threshold question is whether the petitioner holds a life estate in the home or whether the *636 petitioner is merely allowed to occupy the house. Traditionally, the “descriptive words denoting a life tenancy are ‘use and occupation’ ” (8 Warren’s Weed, New York Real Property, Life Estates § 1.01 [2] [4th ed]). The distinction is critical as a right of occupancy is a personal privilege only (Estate of Cimino, NYLJ, Aug. 2, 1995, at 25, col 6). Where an agreement was drawn by an experienced lawyer and the “usual words denoting a life tenancy ‘use and occupation’ were not used,” the court found the party had “merely a right to occupancy” as opposed to a life estate (Rizzo v Mataranglo, 16 Misc 2d 20, 21, affd 16 Misc 2d 21, lv denied 285 App Div 814). Similarly, when the wife of the decedent was “permitted to occupy, rent free, for her residential purposes,” the wife was found to have a “mere right of occupancy” as the bequest was carefully drafted to avoid giving the “use” of the premises (Matter of Stokes, NYLJ, Dec. 29, 1995, at 31, col 5). Further indicia of a right of occupancy can be found where there is “no language from which the added rights and responsibilities of a life estate can be implied” and no right exists to lease or collect rents and the responsibility for maintenance falls upon someone other than the life tenant (Stokes, supra).
A life estate has been found to exist where the decedent left her one half of real property “for the use and benefit” of her son “for so long as he shall wish to remain in residence there” and where the son was responsible for the payment of all taxes and maintenance for as long as he resided in the house (Matter of Heinlin, NYLJ, May 21, 1996, at 35, col 2; see also, Matter of Holzwasser, 177 Misc 868). A declaration by a testator that his purpose in giving his wife a life estate was to provide her with a suitable residence did not act as a “limitation of the estate to a mere * * * occupancy” (Tobias v Cohn, 36 NY 363, 364). Further, a “devise of the use of a piece of property during the natural life of a person gives to that person a life estate in the property and not merely the right to occupy it” (Matter of Gaffers, 254 App Div 448, 451).
In the instant proceeding, the petitioner was given the right to live in the premises for his lifetime and was directed to pay the maintenance, including the insurance and taxes thereon. Further, the petitioner has an apparent power of sale as he can be neither forced nor required to sell “until he so desires.” Finally, all of the parties conceded that the petitioner has a life estate in the home. Clearly, even though the traditional “use *637 and occupancy” words were not used, the petitioner has a life estate in the real property.*
The next question is whether the petitioner, as the owner of a life estate, can force the sale of the home over the objections of the executrix. The executrix argues that her wishes must be followed absent extraordinary circumstances as she is authorized pursuant to EPTL 11-1.1 (b) (5) (B) to sell any property “on such terms as in the opinion of the fiduciary will be most advantageous to those interested therein.” The powers of the executrix, however, are expressly limited by the terms of the will (EPTL 11-1.1 [b]). In the instant proceeding, the executrix cannot sell the real property until the petitioner “so desires.”
The petitioner’s authority to ask the court for permission to sell the real property is found in section 1904 of the Surrogate’s Court Procedure Act and section 1601 of the Real Property Actions and Proceedings Law. Although the petitioner made the instant application pursuant to article 19 of the Surrogate’s Court Procedure Act, the proceedings in the SCPA are not deemed exclusive and the “court is empowered in any proceeding, whether or not specifically provided for, to exercise any of the jurisdiction granted to it by this act or other provisions of law * * *” (SCPA 202). Further, statutes which relate to the same thing are said to be in “pari materia” and are to be construed together (McKinney’s Cons Laws of NY, Book 1, Statutes § 221).
Pursuant to SCPA 1904 (1), “any person interested” can petition for authorization to dispose of the decedent’s real property (SCPA 1904 [1]; 1901). Any person interested includes a life tenant (Matter of Bolton, 79 Misc 2d 895). Moreover, where a party to a proceeding pursuant to article 19 of the SCPA has a life estate, the “court must determine whether the interests of all the parties will be better protected or a more advantageous disposition can be made of the real property by including the disposition of such right or interest * * *” (SCPA 1918 [1]).
Section 1602 of the Real Property Actions and Proceedings Law, in turn, provides that “[w]hen the ownership of real property is divided into one or more possessory interests and one or more future interests, the owner of any interest in such real *638 property * * * may apply to the court designated in section 1603 for an order directing that said real property * * * be * * * sold.” An application may be granted if the court is satisfied that the “act to be authorized is expedient” (RPAPL 1604). Although section 1603 of the RPAPL provides that the application be made to the Supreme Court, the Surrogate’s Court has concurrent jurisdiction pursuant to SCPA 1902 (7) to grant the relief (Matter of Gardiner v United States Trust Co., 275 AD2d 413). SCPA 1902 (7) provides that real property may be disposed of “[flor any other purpose the court deems necessary.”
As the courts have noted, “[t]here is a dearth, if not total absence, of reported cases dealing with the subject” of the sale of life estates over objection of a party to the proceeding (Matter of Perkins, 55 Misc 2d 834, 837; see also, Matter of Bolton, supra at 901). To justify a sale, pursuant to section 1902 (7) of the SCPA, “some estate purpose must be served, the action must serve to carry out the provisions of the will or be of benefit to those interested in the estate” (Matter of Perkins, supra; Matter of Bolton, supra [emphasis added]).
Where a life tenant brings a proceeding to compel the sale of real property pursuant to section 1602 of the RPAPL, the life tenant must show that the act is expedient. Expedient is defined as “characterized by suitability, practicality, and efficiency in achieving a particular end; fit, proper or advantageous under the circumstances” (Webster’s Third New International Dictionary 799 [1966]). A petition was granted as expedient where the purchase price was well in excess of the appraised value; the rent was insufficient to pay the taxes; the house was unoccupied; and the life tenant would have to expend a considerable sum of money for taxes, insurance and maintenance of the house (Matter of Gaffers, 254 App Div 448, 450).
In the instant proceeding, the life tenant’s purported reasons for selling the real property are that the real estate market is high and he desires to relocate. The will provides that the life tenant cannot be forced to sell the property “until he so desires.” The life tenant now desires to sell the property. The only way to carry out the provisions of the will is to allow the life tenant to sell the property. Granting the application is expedient, as well as suitable, practical and efficient in reaching the end which is to allow the life tenant to sell the real property, the power of which he was given pursuant to the decedent’s will.
The final question that remains is what value shall be given to the life estate and in what form does the life tenant take the *639 proceeds. Section 1918 (2) of the Surrogate’s Court Procedure Act sets forth the following: “[t]he provisions of law in relation to the right of * * * estates for life * * * so far as the same may be applicable, shall govern and control the distribution of moneys realized on such disposition * * * .” The provisions of law relating to life estates are found in the Real Property Actions and Proceedings Law which provides that anyone who is a “tenant for life or for years, in or of an undivided share of the property sold * * * is entitled to have a proportion of the proceeds of the sale invested, secured or paid over, in such manner as the court deems calculated to protect the rights and interests of the parties” (RPAPL 967). Moreover, section 968 of the Real Property Actions and Proceedings Law sets forth that the “power to determine whether the owner of the particular estate shall receive, in satisfaction of his estate or interest, a sum in gross or shall receive the earnings, as they accrue, of a sum invested for his benefit in permanent securities at interest, rests in the discretion of the court * * * The application of the owner of any such particular estate for the award of a sum in gross shall be granted unless the court finds that unreasonable hardship is likely to be caused thereby to the owner of some other interest in the affected real property.” As this issue, has not been fully addressed, the parties are directed to file memoranda of law in support of their position that the petitioner is either entitled to the gross amount of the value of the life estate or whether said amount must be invested for his benefit. The memoranda should be filed by December 19, 2002.
The application is granted insofar as the petitioner is allowed to sell the property subject to certain limitations. As the petitioner has represented that the original buyer may still be interested in purchasing the property, the parties are directed to appear at a status conference on Thursday, December 19, 2002, at 11:30 a.m., to advise the court as to whether the original buyer is still ready, willing and able to purchase the property.

 The conveyance of the life estate coupled with a power of sale may in some cases convey fee absolute. In New York, however, there must be some language in the will which indicates that the interest in the property is greater than the life estate or that the testator intended that the power of sale benefit the holder of the life estate (In re Hayes’ Will, 114 NYS2d 87; Weinstein v Weber, 178 NY 94).