[60 NYS3d 49]

Thomas G. Hahn, Jr., et al., Appellants, v Johanne Hagar, Respondent.

Second Department, July 19, 2017

APPEARANCES OF COUNSEL

*Corbally, Gartland and Rappleyea, LLP*, Poughkeepsie (*Allan B. Rappleyea* of counsel), for appellants.

*Gellert, Klein & MacLeod, LLP*, Poughkeepsie (*Roderick J. MacLeod* of counsel), for respondent.

## OPINION OF THE COURT

CONNOLLY, J.

The parties to this action are siblings who disagree over the future of a Hudson Valley farm that has been in their family for more than 240 years. The plaintiff Thomas G. Hahn, Jr., who holds a qualified life estate in the property, and two of his sisters, who hold remainder interests, seek authorization pursuant to RPAPL 1602 to sell the development rights to the property in order to preserve its future use as a farm. This appeal requires us to consider, for the first time, whether development rights constitute "real property, or a part thereof" for purposes of RPAPL 1602. For the reasons that follow, we hold that development rights constitute real property for purposes

of RPAPL 1602, but that the plaintiffs failed to establish their entitlement to relief pursuant to that statute.

## I

The plaintiffs, Thomas G. Hahn, Jr., Jeanne Halstead, and Barbara Butts, and the defendant, Johanne Hagar, are siblings. The subject of this controversy is a 101-acre farm, known as the "Hahn Farm," located in the Town of Pleasant Valley, Dutchess County. The property, which has been in the parties' family for more than 240 years, was owned jointly by their parents until their father's death in 1995, and then solely by the parties' mother, Edna Hahn, until her death on November 28, 2007. Edna Hahn's will conferred a qualified life estate in the property upon Thomas G. Hahn, Jr., and left the remainder interest to her four children in equal shares, as follows:

> "If my son, Thomas G. Hahn, Jr., survives me, I confer upon him life use of all the real property and related improvements owned by me at the time of my death, it being my intention that he be permitted to continue to farm such real property and use such improvements for the remainder of his life or for such period of time as he otherwise elects. My said son shall be responsible for all expenses in connection therewith including, but not limited to, taxes, utilities and maintenance costs. Upon the death of said son or, if he elects to cease farming said property prior to his death, I devise all such real property and related improvements to my children, Barbara Butts, Johanne Hagar, Jeanne Halstead and Thomas G. Hahn, Jr., in equal share per stirpes."

In or about 2011, the plaintiffs became interested in permanently preserving the property as farmland and restricting its future development by selling some or all of the property's development rights or, in the alternative, placing a conservation easement over some or all of the property. When the defendant expressed reluctance to selling her share of the development rights, the plaintiffs commenced this action pursuant to RPAPL 1602 for a judgment determining that they "may either sell the development rights to Hahn Farm, to preserve it as a farm, or, alternatively, to place a conservation easement on Hahn Farm, to again preserve it as a farm, and that such judgment shall bind all parties to this action in per-

petuity."[1] Under RPAPL 1602, the owner of a possessory interest in real property, such as a life estate, may apply to the court for an order directing that the "real property, or a part thereof, be mortgaged, leased or sold." A court is authorized to grant an application pursuant to RPAPL 1602 if it is satisfied that the requested relief is "expedient" (RPAPL 1604).

At her deposition, the defendant testified that she believed the plaintiffs' request for her to authorize a sale of the development rights was contrary to their mother's will, which specified that the property would go to the four siblings as tenants in common if their brother ceased farming or died. The defendant testified that a sale of the development rights would limit the possibility of using the property in the future, and that she did not wish to see the property's future use burdened in any way. During discussions with the plaintiffs, the defendant proposed carving out a piece of the property for her so that the plaintiffs could then use the remaining property as they saw fit, but the plaintiffs rejected this offer. Although the defendant had no specific plans to use the property, she expressed a desire to keep it in the family, noting that her interest could eventually pass to her own children and grandchildren, who could use the property for living, working, or as an income source.[2]

Following discovery, the parties submitted the matter to the Supreme Court upon a stipulation of agreed facts, which incorporated the defendant's deposition as an exhibit. Of note, the parties stipulated to a general understanding of what was meant by a sale of development rights:

> "Typically, with the sale of development rights, the owners agree that in exchange for a sum of money to be determined by an appraisal, they place perpetual restrictions on the property limiting the density of development. In other words, in exchange for money, owners agree that fewer homes than are allowed by zoning and planning regulations, may be built."

---

**1.** The plaintiffs also asserted a second cause of action, in the alternative, for involuntary partition pursuant RPAPL article 9 to compel a sale of the defendant's entire interest in the property to the plaintiffs. In the order appealed from, the Supreme Court held that the plaintiffs abandoned that cause of action, and the plaintiffs do not seek appellate review of that determination.

**2.** The record does not include any depositions of the plaintiffs.

The parties also stipulated that, as of the time this matter was submitted to the court, Thomas G. Hahn, Jr., continued to actively farm the property.

In an order dated May 11, 2015, the Supreme Court determined that development rights do not constitute real property, or a part thereof, for purposes of RPAPL 1602. The court reasoned that the statutory authority granted by RPAPL 1602 "cannot be rationally extended to compel the sale of a portion of the abstract and intangible rights that contribute to the value of that land, separate and apart from the sale of the land itself" (*Hahn v Hagar*, 48 Misc 3d 430, 434 [Sup Ct, Dutchess County 2015]). Accordingly, the court directed the dismissal of the cause of action pursuant to RPAPL 1602. The plaintiffs appeal.

## II

The issue of whether development rights constitute real property, or a part thereof, for the purposes of RPAPL 1602, is one of first impression for this Court. We begin our analysis by examining the language of RPAPL 1602. That section provides, in relevant part:

> "When the ownership of real property is divided into one or more possessory interests and one or more future interests, the owner of any interest in such real property or in the proceeds to be derived therefrom on a directed sale thereof, except the owner of a possessory estate in fee simple absolute therein, may apply to the court . . . for an order directing that said *real property, or a part thereof*, be mortgaged, leased or sold" (RPAPL 1602 [emphasis added]).

The General Construction Law, "which supplies the definitions of certain statutory terms used to interpret the language and purpose of a statute" (*Roslyn Union Free School Dist. v Barkan*, 16 NY3d 643, 649 [2011]; *see* General Construction Law § 110), defines the term "real property" to include "real estate, lands, tenements and hereditaments, corporeal and incorporeal" (General Construction Law § 40).[3] This expansive definition includes, but is not limited to, the tangible aspects of real property, such as physical land, buildings, and fixtures (*see* Black's Law Dictionary [10th ed 2014], corporeal heredita-

---

**3.** Similar definitions of the term "real property" are echoed in other statutes not specifically applicable to RPAPL 1602 (*see* RPAPL 111 [1], [2]; Real Property Law § 2 [1]; *see also* Tax Law § 1401 [f]).

ment), the multiplicity of estates in land that may be held by freehold, e.g., in fee simple, a term for life, etc. (*see* Black's Law Dictionary [10th ed 2014], tenement, freehold; *see e.g. Fischer v Zepa Consulting*, 95 NY2d 66, 71 [2000]), as well as more intangible rights in real property, such as easements (*see* Black's Law Dictionary [10th ed 2014], incorporeal hereditament; *Saratoga State Waters Corp. v Pratt*, 227 NY 429, 444-445 [1920]).

Although the parties in this case stipulated to a definition of "development rights," the specific rights or burdens broadly referred to by this term may vary according to contractual terms or applicable governing statutes. For instance, the limits on development agreed upon by parties to a conservation easement may vary depending on the parties' goals and circumstances (*compare Matter of Friends of Shawangunks v Knowlton*, 64 NY2d 387, 390 [1985] [parties to a conservation easement agreed to limit development on 240 acres of land contiguous to a state park to the "erection of one single family residence, a potable water storage pond and the maintenance of the existing golf course and accessory areas"], *with Hotel Taft Assoc. v Sommer*, 34 Misc 2d 367, 369 [Sup Ct, New York County 1962], *affd no opinion* 18 AD2d 796 [1963] [fully recorded restrictive agreement between neighboring property owners provided: "so long as the Roxy Theatre shall stand no building of greater height than the Roxy Theatre shall be erected on the 'rear portion' of the Roxy property"]). By contrast, transferable development rights, a creature of statute, may be reduced to credits and transferred as part of a legislative scheme designed to incentivize growth in desired areas and to provide compensation for the preservation of natural or historic resources (*see e.g. Penn Central Transp. Co. v New York City*, 438 US 104, 137 [1978] [noting that the appellant had valuable development rights to the air space above Grand Central Station which had been made transferable to adjacent parcels]; *Argyle Farm & Props., LLC v Watershed Agric. Council of the N.Y. City Watersheds, Inc.*, 135 AD3d 1262, 1263 [2016] [describing conservation easement program permitting not-for-profit corporation to purchase development rights to agricultural land]; *see also* John R. Nolon, *Historical Overview of the American Land Use System: A Diagnostic Approach to Evaluating Governmental Land Use Control*, 23 Pace Envtl L Rev 821, 844 [2006] ["State law allows New York municipalities to establish transfer of development rights programs that concen-

trate development in receiving districts and provide for the transfer of development rights from sending districts"], citing Town Law § 261-a, Village Law § 7-701, and General City Law § 20-f).

■ Nevertheless, development rights, as that term was understood by the parties to this action, are clearly "real property, or a part thereof" (RPAPL 1602). Indeed, the Court of Appeals has held that development rights constitute interests within the metaphorical "bundle of rights" that comprise fee interests in real property (*see Seawall Assoc. v City of New York*, 74 NY2d 92, 109 [1989]; *see also Matter of Gibson v Gleason*, 20 AD3d 623, 627 [2005]). In *Seawall*, the Court of Appeals observed that "[t]here can be no question that the development rights which have been totally abrogated by the local law are, standing alone, valuable components of the 'bundle of rights' making up their fee interests" (74 NY2d at 109, citing Frank I. Michelman, *Property, Utility, and Fairness: Comments on the Ethical Foundations of "Just Compensation" Law*, 80 Harv L Rev 1165, 1233 [1967] [a prospective use of land constitutes "a discrete twig out of (the owner's) fee simple bundle" of rights]). Applying the bundle-of-rights metaphor to the case at bar, by seeking court approval to convey away the right to build as many homes as are allowed by zoning and planning regulations, the plaintiffs are seeking to convey those portions of the bundle of rights comprising the maximum development capacity of the property. Moreover, in drafting RPAPL 1602, the legislature gave courts the authority to compel the mortgage, lease, or sale of "real property, or *a part* thereof" (emphasis added), without placing any limitations on which "parts" of the bundle of rights comprising real property are subject to the statute. "Ordinarily, where the Legislature in enacting a statute utilized general terms, and did not, either expressly or by implication, limit their operation, the court will not impose any limitation" (McKinney's Cons Laws of NY, Book 1, Statutes § 114, Comment at 238 [1971 ed]; *see Matter of Tucker v Board of Educ., Community School Dist. No. 10*, 82 NY2d 274, 278 [1993]; *Matter of Di Brizzi [Proskauer]*, 303 NY 206, 214 [1951]).

Accordingly, we hold that development rights, as defined by the parties, constitute "real property, or a part thereof," for purposes of RPAPL 1602.

### III

However, we nevertheless affirm the dismissal of the cause of action pursuant to RPAPL 1602 because the plaintiffs failed to establish that the proposed sale of development rights would be expedient (*see Matter of Talmage*, 64 AD3d 662 [2009]). RPAPL 1604 provides:

> "The court to which an application has been duly made pursuant to the provisions of . . . section 1602 is authorized to grant such application upon such terms as to it shall seem proper, if satisfied from the proceedings theretofore duly had, that the act to be authorized is expedient . . . . The granting of such an application is not necessarily precluded by the fact that it is opposed by one or more persons having interests in the affected real property; or by the fact that the granting thereof will be in contravention of a provision contained in the instrument creating some or all of the interests in the affected real property."

The term "expedient," in this context, has been understood to mean " 'characterized by suitability, practicality, and efficiency in achieving a particular end; fit, proper or advantageous under the circumstances' " (*Matter of Sauer*, 194 Misc 2d 634, 638 [Sur Ct, Nassau County 2002], quoting Webster's Third New International Dictionary 799 [1966]; *see Matter of Talmage*, 64 AD3d at 663 [citing *Matter of Sauer* with approval]). The plaintiffs bear the burden of establishing that granting the application would be expedient (*see Matter of Talmage*, 64 AD3d at 663).

Here, although the plaintiffs' desire to preserve the property as farmland in perpetuity could be considered a laudable and moral goal, they failed to establish that stripping the development rights from the underlying land would be expedient (*id.* ["The record establishes that while a sale of the property would be advantageous to the petitioner, it would not . . . be advantageous to the interests of the estate or the remaindermen"]). Notably, the plaintiffs did not present any evidence of a proposed buyer for the development rights or the value of the underlying property with and without the development rights, nor did they present any evidence of any other tangible or intangible benefit that would be achieved by a sale of the development rights (*cf. Matter of Gaffers*, 254 App Div 448, 451 [1938] [proposed sale of 115-acre farm for $15,000 was expedi-

ent where "(t)wo competent appraisers placed the fair market value of the property at $13,000"]). Additionally, the plaintiffs presented no evidence that the sale of the development rights was necessary to preserve the property as an asset (*cf. id.* at 450 [proposed sale of property was expedient where the petition alleged that rental income from the property was insufficient to pay the taxes and upkeep, and the house on the property was unoccupied and at risk of deterioration]).

Accordingly, since the plaintiffs failed to establish that the sale of the development rights for the property would be expedient, the Supreme Court properly directed the dismissal of the cause of action pursuant to RPAPL 1602, and the order is affirmed insofar as appealed from.

HALL, J.P., AUSTIN and SGROI, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.